IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-01202-RP |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT AUSTIN, et al., | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## SECOND-AMENDED COMPLAINT

Defendants, The University of Texas at Austin ("UTAustin") and Dr. John Clarke ("Dr. Clarke"), sued in his official capacity[1] (collectively, "Defendants"), file this Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), and respectfully show the Court as follows:

### I.   INTRODUCTION

Despite the Court ordering Plaintiff, Amanda Valenzuela ("Valenzuela"), to file a more definite statement of the claims (**Dkt. 6**), and the Court granting leave to amend a second time, Plaintiff's Second Amended Complaint ("Complaint") (**Dkt. 22**) still contains numerous deficiencies. The Complaint contains only bare bone claims in which Valenzuela vaguely alleges that UTAustin committed various discrete and intentional discriminatory acts against her on the

---

[1] Valenzuela does not state whether Dr. Clarke is sued in his official or individual capacity, but all references appear to indicate that he is sued in his official capacity only. *See, e.g.,* **Dkt. 22**, at ¶ 6 ("may be served with summons at Clarke's place of employment"); ¶ 42 ("Clarke remains discriminating against Amanda through his position as the Graduate Advisor for Defendant UTAustin's Art History program."). Indeed, the only cause of action that Valenzuela appears to allege against Dr. Clarke is for a Section 1983 violation. *See id.* at ¶ 92 ("The administrators implementing Defendants' Actions Against Amanda were state actors, exercising their delegated duties acting under the color of state law…"). To the extent that Valenzuela brings a claim against Dr. Clarke in his individual capacity without making her intent clear, he possesses qualified immunity as discussed *infra*. Additionally, any service of process made on Dr. Clarke individually by serving him via certified mail at UTAustin is insufficient, pursuant to Rule 12(b)(5).

basis of her alleged disability from 2015 to the present, in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), Title II of the Americans with Disabilities Act ("ADA"), and now violations of her equal protection rights under 42 U.S.C. § 1983. *Id.* Valenzuela also asserts claims for punitive damages as a fourth cause of action, post-judgment interest as a fifth cause of action, and attorney's fees as a sixth cause of action. *Id.* at 98-100.

The Court should dismiss Valenzuela's claims against UTAustin for the following reasons. ***First,*** the majority of the claims under the ADA, Rehab Act, and § 1983 are barred by the two-year statute of limitations and must be dismissed with prejudice. ***Second,*** UTAustin and Dr. Clarke in his official capacity have state sovereign immunity from the ADA and § 1983 claims, which must be dismissed without prejudice for lack of subject matter jurisdiction. ***Third,*** the Rehab Act claims must be dismissed with prejudice for failure to state a claim. ***Fourth,*** Valenzuela lacks standing for her claims, which must be dismissed without prejudice for lack of jurisdiction. ***Fifth,*** Valenzuela's claims against Dr. Clarke in his individual capacity must be dismissed without prejudice for insufficient service of process. ***Sixth***, Dr. Clarke has qualified immunity for any claims asserted against him in his individual capacity, which must be dismissed with prejudice for failure to state a claim. ***Finally***, punitive damages are not recoverable against Defendants. For these reasons, Defendants respectfully request that Valenzuela's claims be dismissed in their entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.  FACTUAL ALLEGATIONS

Defendant UTAustin disputes the recitation of facts contained in the Complaint; however, for ease of review at this stage in the litigation the facts asserted in the Complaint are briefly summarized below:

Valenzuela is a student at UTAustin working on her master's degree in Art History. **Dkt. 22,** at ¶ 9. On October 15, 2015, Valenzuela presented documentation of a disability and registered

with the Division of Diversity and Community Engagement – Services for Students with Disabilities ("SSD"). *Id.* at 30. SSD subsequently granted the following classroom accommodations: (1) Permission to audio tape lecture; (2) Permission to approach instructor to discuss flexible deadlines. Final determination made by instructor based on the structure of the course; (3) Permission to discuss possibility of flexibility with attendance. Final determination made by instructor based on structure of the course and by using the included Attendance Clarification Form. This form must be completed, signed by both student and instructor, and then returned to SSD in order to be officially recognized. **EX. A**, at 3-4 (SSD acceptance of services).[2] SSD granted the following testing accommodations: (1) One and one half the allotted time for taking tests and completing work in class unless speed is the factor being tested. This does not apply to take home exams; and (2) test location in a reduced distraction environment. *Id.* SSD granted the following services: (1) Texts in alternative format (Kurzweil); (2) Course Load Reduction; and (3) Accommodation Letters. *Id.* On February 28, 2018, SSD amended the accommodations and services to provide for the additional classroom and testing accommodation of allowing the student to occasionally step out of class for up to 5-10 minutes. *Id.* at 1-2.

In late 2015, as a result of her alleged disability and generally poor health, Valenzuela requested a medical leave of absence, UTAustin approved the request, and she took leave from her studies at UTAustin from Fall 2015 to August 2016. *Id.* at ¶¶ 16-17. Upon returning from her medical leave of absence in August 2016, Valenzuela claims that her "troubles with Defendant UTAustin increased dramatically." *Id.* at ¶ 18. As a result of the alleged discriminatory actions

---

[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Valenzuela attached as Exhibit 1 to her Complaint the verification of services granted by SSD. **Dkt. 22**, at 30. These accommodations are also central to her claims throughout the Complaint. *Id.* at ¶¶ 1, 15, 37-39, 43-49. Accordingly, Defendants are entitled to attach a copy of the actual acceptance of services that provide a more in-depth explanation of the accommodations and services granted by SSD to Valenzuela on October 15, 2015.

---

taken by the Office of Financial Aid *and* the severe worsening of her physical condition as a result of the incident at the Health Center in February 2017[3], Valenzuela pleaded that she had to spend a vast amount of time coordinating between various offices to submit documentation for her eligibility of financial aid and to attend weekly doctor's appointments. *Id.* at ¶¶ 21-23. In the Spring of 2017, Valenzuela alleges that she had to quit her part time job and take incompletes in her classes to finish the limited amount of course work she was capable of completing. *Id.* at ¶ 24. In May of 2017, Valenzuela pleaded that she was referred to a specialist because of the incident at the Health Center where she was diagnosed with Hashimoto's Thyroiditis. *Id.* at ¶ 26. Valenzuela alleges that at that time her disabilities included the following: (a) Thyroid nodule growth, triggering Hashimoto's; (b) Chronic Fatigue Syndrome; (c) 6+ migraines per month; (d) Digestive sensitivity (IBS); (e) 40+ food/ingredient sensitivities; (f) Current infertility due to thyroid disease (may be long term); (g) Crippling anxiety, stress and panic attacks; (h) Chronic pain and inflammation; (i) Disturbed sleep; and (j) Impaired cognition. *Id.* at ¶ 27.

Valenzuela's allegations regarding how UTAustin and Dr. Clarke violated the ADA, Rehab Act, and § 1983 is difficult to ascertain. Nevertheless, an attempt to do so will be made herein. Liberally construed, Valenzuela appears to allege that UTAustin violated the ADA, the Rehab Act, and her equal protection rights under the Fourteenth Amendment (via § 1983) when it made the following alleged "Denials":

(1) in April 2018, Valenzuela was still having to fight with the Art History Department as to when and what courses she would be allowed to proceed with for the development of her thesis;

(2) in April 2018, the Art History Department required Valenzuela to take coursework in Italian for her thesis that was not required of non-disabled students; she was denied a waiver to use her undergraduate degree in French towards the foreign language

---

[3] Valenzuela pleaded that a physician at the Health Center committed medical malpractice in February 2017 when he recommended a medication regimen of toxic levels of iodine. **Dkt. 22**, at ¶ 21. Valenzuela further pleaded that UTAustin is immune from the damages caused by this injury. *Id.* at ¶ 27. Additionally, Valenzuela has not brought a medical malpractice claim in this lawsuit.

requirement;

(3) on October 31, 2018, Professor Nassos Papalexandrou discriminated against Valenzuela on the basis of her disabilities when he rejected her request for advising assistance;

(4) in early 2015, Dr. Clarke ignored Valenzuela's accommodations resulting in a denial of the accommodations in a lecture tutorial;

(5) after returning from her medical leave of absence in August 2016, Valenzuela was forced to select only "independent studies" classes with Dr. Clarke to avoid the impact of his refusal to allow accommodations;

(6) Dr. Clarke remains discriminating against Valenzuela through his position as Graduate Advisor for UTAustin's Art History program;

(7) in the Fall of 2015, Fall of 2016, and Fall of 2017, Dr. Penelope Davies ("Dr. Davies") denied Valenzuela certain accommodations in three seminars;

(8) in the Spring of 2020, Valenzuela was required to take another leave of absence because Dr. Clarke refused to take her on and advise her on her thesis resulting in a delay of her graduation;

(9) in the Fall of 2015 and Fall of 2016, Dr. Cherise Smith ("Dr. Smith") denied Valenzuela certain accommodations in her class Art Historical Methods;

(10) in the Spring of 2018, Dr. Adria Frizzi ("Dr. Frizzi") denied Valenzuela certain accommodations in her beginning Italian class;

(11) the Art History Department has refused to schedule the colloquium on Valenzuela's thesis since November 2018 because it is weary of her disabilities;

(12) the Office of Financial Aid again rejected Valenzuela's request for financial aid for the 2018-2019 school year and forced her to file another appeal on January 30, 2019;

(13) in January 2020, Valenzuela was denied registration for final class work and forced to take a leave of absence;

(14) on April 23, 2020, UTAustin informed Valenzuela that it would review her request to return and complete her course work;

(15) despite following the rules presented to her, UTAustin has not told Valenzuela whether a person with her disabilities will be allowed to finish her studies;

(16) UTAustin discriminated against Valenzuela by not including her on the website showcasing each of the Art History graduate students; and

(17) despite Valenzuela's readmission to the graduate program, UTAustin and Dr. Clarke continue to treat Valenzuela as if she is not really a part of the Art History program.

*Id.* at ¶¶ 28-60, 69-70. Additionally, Valenzuela alleges that UTAustin's Office of Financial Aid "challeng[ed]" her financial aid because she took a medical leave of absence from Fall 2015- August 2016, and allegedly took an improper review of her disabilities. *Id.* at ¶¶ 19-20.

### III. STANDARD OF REVIEW

#### A. Fed. R. Civ. P. 12(b)(1).

A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, and a claim is properly dismissed under this rule when "the court lacks the statutory or constitutional power to adjudicate [it]." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). Rule 12(b)(1) is the proper vehicle to bring a jurisdictional challenge based on sovereign immunity or ripeness grounds. *Connelly v. Tex. Dep't of Crim. Just.*, 2005 WL 6439531, No. H-03-1581, at *1 (S.D. Tex. Mar. 22, 2005) (citing *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996)); *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). On a motion to dismiss under Rule 12(b)(1), a defendant may challenge the plaintiff's complaint either on its face ("facial attack") or on the truthfulness of its proffered facts ("factual attack"). *Menchaca v. Chrysler Credit Corp.,* 613 F. 2d 507, 511 (5th Cir. 1990).

When a Rule 12(b)(1) motion challenges the complaint on its face, without reference to extraneous facts, courts analyze the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Doe v. Myspace*, 528 F.3d 413, 418 (5th Cir. 2008). The burden of proof in a facial attack is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Dismissal for lack of subject matter jurisdiction is appropriate when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Warnock*, 88 F.3d at 343.

"A 'factual attack' challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* Furthermore, "no presumptive truthfulness attaches to the plaintiff's allegations," and the trial court may evaluate for itself the merits of the jurisdictional facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). In such a challenge, the plaintiff has the

burden of proving by a preponderance of the evidence that federal jurisdiction does in fact exist. *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 578 (S.D. Tex. 2016) (citing *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981)).

### B.  FED. R. CIV. P. 12(b)(6).

Under a Rule 12(b)(6) motion, if the facts alleged, viewed in the light most favorable to the plaintiff, do not create a right to relief, then a court should dismiss the plaintiff's claims. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all well-pleaded facts as true, mere legal conclusions are not entitled to any such weight. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).

### C.  FED. R. CIV. P. 12(b)(5).

A motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process is reviewed under an abuse of discretion standard. *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam). Absent proper service of process, the court cannot exercise personal jurisdiction over a party named as a defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Carribean Cruise Line, Inc.,* 959 F.2d 1344, 1346 (5th Cir.1996).

## IV. ARGUMENT AND AUTHORITIES

### A. The Majority of Valenzuela's Claims are Barred by the Statute of Limitations.

Based on the pleadings, multiple claims brought by Valenzuela should be dismissed with prejudice as barred by the statute of limitations. A limitations defense supports a Rule 12(b)(6) dismissal when (1) it is evident from the plaintiff's pleadings that the action is barred and (2) the pleadings fail to raise some basis for tolling or the like. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted). Here, Valenzuela brought claims under the ADA, Rehab Act, and § 1983 which does not specify a statute of limitations period. When Congress does not establish a limitations period for a federal cause of action, the "general rule" is that we borrow the most analogous period from state law. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). The two-year general personal injury limitations period set out in Section 16.003 of the Texas Civil Practice and Remedies Code applies to Valenzuela's claims under the Rehab Act, ADA, and § 1983. *See id.* (recognizing two-year statute of limitations for Rehab Act and Title II ADA claims); *Piotrowski v. City of Houston,* 51 F.3d 512, 515 n. 5 (5th Cir. 1995) (Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims filed in the state); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003.

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'" *King–White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Frame,* 657 F.3d at 238). "[U]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). In the context of an ADA and Rehab Act claim, "an injury occurs (and a complete and present cause of action arises) under Title II when a disabled

individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity." *Frame,* 657 F.3d at 238.[4]

### 1. The majority of the actions are time-barred.

Although Valenzuela fails to plead when most of the alleged discriminatory acts were committed, piecing together separate allegations, it can be established that the majority of the alleged events are statutorily time-barred for failure to timely file her lawsuit bringing such claims. As discussed above in section II, the alleged "Denials" set out in (1)-(2), (4)-(5), (7), and (9)-(10), and Valenzuela's allegation that UTAustin's Office of Financial Aid "challeng[ed]" her financial aid because she took a medical leave of absence from Fall 2015-August 2016 and allegedly took an improper review of her disabilities, are statutorily time-barred.[5]

***First***, the Court should dismiss Valenzuela's claim that UTAustin challenged her eligibility for financial aid after she returned from her medical leave of absence in August 2016, and that UTAustin allegedly took an improper review of her disabilities. **Dkt. 22,** at ¶¶ 19-20. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued by February 2017 at the latest. ***Id.*** at ¶ 21. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by February 2019. Valenzuela first asserted this claim in Plaintiff's Original Petition filed on December 11, 2019. **Dkt. 1,** at ¶ 18-20. Accordingly, this claim is statutorily time-barred.

***Second,*** the Court should dismiss Valenzuela's claim that in April 2018 she was still having to fight with the Art History Department as to when and what courses she would be allowed to proceed with for the development of her thesis. **Dkt. 22,** at ¶ 29. Similarly, the Court should also

---

[4] Congress intended that Title II of the ADA "work in the same manner as Section 504." *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000). "Jurisprudence interpreting either statute is generally applicable to both." *Id. Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).
[5] This corresponds to paragraphs 19-20, 29-34, 38-41, 43-44, and 46-49 of the Complaint. **Dkt. 22**.

dismiss Valenzuela's claim that in April 2018 the Art History Department required her to take coursework in Italian for her thesis that was not required of non-disabled students and that it denied her request for a waiver. *Id.* at ¶¶ 30-34. Valenzuela's Complaint is vague (perhaps intentionally so) on the precise date in April 2018 that these two alleged discriminatory acts occurred. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued on a date uncertain in April 2018. Thus, Valenzuela was required to file her lawsuit bringing these claims within two-years by a date uncertain in April 2020. These two claims were initially asserted in Plaintiff's First Amended Petition filed on April 28, 2020. **Dkt. 12**. Despite being given two prior opportunities to do so, Valenzuela has not provided specific dates with regards to many of the alleged adverse employment actions, including this one. If no equitable basis exists to toll limitations, a plaintiff's failure to provide specific dates of discriminatory actions acts as a time bar to these complained-of events. *See Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288 n.3 (5th Cir. 2008).

**Third,** the Court should dismiss Valenzuela's claim that Dr. Clarke in early 2015 ignored the accommodations granted by SSD on October 15, 2015, resulting in a denial of the accommodations in the lecture tutorial taught by Dr. Clarke. **Dkt. 22**, at ¶¶ 38-40. *See* **EX. A.** By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued by early 2015. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by early 2017. Valenzuela first asserted this claim in Plaintiff's Second-Amended Complaint filed on July 13, 2020. **Dkt. 22**, at ¶¶ 38-40. Thus, this claim is statutorily time-barred.

**Fourth,** the Court should dismiss Valenzuela's claim that after returning from her medical leave of absence in August 2016, she was forced to select only "independent studies" classes with

Dr. Clarke to avoid the impact of his refusal to allow accommodations. *Id.* at ¶ 41. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act – if there is even a discrete act since there was no request for an accommodation and subsequent denial – accrued in August 2016. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by August 2018. Valenzuela first asserted this claim in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, this claim is statutorily time-barred.

**Fifth,** the Court should dismiss Valenzuela's claim that in the Fall of 2015, Fall of 2016, and Fall of 2017, Dr. Davies denied her certain accommodations granted by SSD in three seminars. *Id.* at ¶¶ 43-44. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued from the Fall of 2015 to Fall of 2017. Thus, Valenzuela was required to file her lawsuit bringing these claims within two-years of each accrual and by Fall 2017 at the latest for the alleged denials. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, these claims are statutorily time-barred.

**Sixth,** the Court should dismiss Valenzuela's claim that in the Fall of 2015 and Fall of 2016, Dr. Smith denied her certain accommodations granted by SSD in her class Art Historical Methods. *Id.* at ¶¶ 46-48. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued in the Fall of 2015 and Fall of 2016. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years of each accrual and by Fall 2016 at the latest for the alleged denials. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, these claims are statutorily time-barred.

*Finally,* the Court should dismiss Valenzuela's claim that in the Spring of 2018, Dr. Frizzi denied her certain accommodations granted by SSD in her beginning Italian class. *Id.* at ¶ 49. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued in the Spring of 2018. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by Spring of 2020. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, this claim is statutorily time-barred.

All of the above claims should be dismissed by the Court with prejudice, pursuant to Rule 12(b)(6). *See Jones,* 339 F.3d at 366. *See also, e.g., Price v. City of San Antonio, Tex.*, 431 F.3d 890, 895 (5th Cir. 2005) (upholding district court's dismissal of § 1983 claim as being time-barred); *Caldwell v. Dallas County Sheriff*, 3:04-CV-2166-L, 2006 WL 1416734, at *2 (N.D. Tex. May 22, 2006) (affirming magistrate's report and recommendation of dismissal of Title II ADA and § 1983 claims with prejudice as time-barred, pursuant to Fed. R. Civ. P. 12(b)(6)).

### 2. The pleadings fail to raise an equitable basis for tolling.

Recognizing that some of her claims may fall outside the statute of limitations, Valenzuela pleaded that "[a]lthough some of the acts and omissions of Defendant UTAustin towards Plaintiff Amanda may have occurred several years ago, the compilation of, and the continuation of, such wrongful acts and omissions have resulted in the continuing state of *limbo*…" *Id.* at ¶ 2. This is not an equitable remedy. Unless there is an equitable exception to the limitations period, asserting claims of discrete discriminatory acts that fall within the statutory time period will not revive claims for acts that fall outside of the time period because the limitations period runs from the moment a plaintiff's claim accrues. *King–White*, 803 F.3d at 762; *Frame,* 657 F.3d at 238. A "state of limbo" is not a recognized equitable exception. Moreover, Valenzuela has created this self-

inflicted "state of limbo" herself as discussed in more detail *infra.* Accordingly, the pleadings fail to raise an equitable basis for tolling and these claims must be dismissed with prejudice.

**B. Defendants are Entitled to Sovereign Immunity under the ADA and § 1983.**

Eleventh Amendment Immunity[6] protects state entities from private causes of action brought in federal courts unless Congress has validly abrogated the state's immunity to a federal claim, or the state has consented to suit. *Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996). Valenzuela bears the burden of pleading and establishing federal subject-matter jurisdiction by alleging and demonstrating a valid waiver or abrogation of sovereign immunity. *Id.*

**1. UTAustin and Dr. Clarke in his official capacity are State entities.**

There is no dispute that UTAustin is a state entity. Valenzuela acknowledges that UTAustin "is a public university operating in the State of Texas" and that UTAustin is "owned and operated by the State of Texas." **Dkt. 22**, at ¶¶ 5, 81. *See* TEX. GOV'T CODE § 572.002(10)(B) (defining a state agency to include a university system or institution of higher education). *See also,* TEX. EDUC. CODE § 67.02 (defining The University of Texas at Austin); TEX. EDUC. CODE § 65.02 (establishing that UTAustin is part of The University of Texas System). As a state entity, UTAustin is also entitled to state sovereign immunity under the Eleventh Amendment. To the extent that Valenzuela has sued Dr. Clarke in his official capacity, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." *Id.* Accordingly,

---

[6] The Eleventh Amendment of the United States Constitution codifies the common-law doctrine of state sovereign immunity with respect to suits brought in federal courts. *Alden v. Maine*, 527 U.S. 706, 712-713 (1999). Although the Eleventh Amendment does not "create" a state's entitlement to sovereign immunity, courts often use the terms "Eleventh Amendment Immunity" and "sovereign immunity" interchangeably in reference to a state's immunity from federal subject-matter jurisdiction. *See Mayer ex. rel. Benzing v. Tex.*, 410 F. 3d 236, 240-41 (5th Cir. 2005).

the Eleventh Amendment also extends sovereign immunity to Dr. Clarke in his official capacity.

Because Valenzuela has sued a state entity, she must not only show that her claims are plausible, but she must also overcome the Eleventh Amendment's bar to suits against the state. Valenzuela makes no claim that Texas has waived, or that Congress has abrogated sovereign immunity as to her ADA and § 1983 claims. In fact, they have not.

### 2. Sovereign immunity has not been abrogated for Valenzuela's § 1983 Claims.

The vehicle for bringing a violation of equal protection rights pursuant to the Fourteenth Amendment to the U.S. Constitution is 42 U.S.C. § 1983. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). "Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, and 1985." *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1030 (S.D.Tex.1996). *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983."). Moreover, the State of Texas has not consented to this type of suit. *Aguilar,* 160 F.3d at 1054. Not only is Texas's sovereign immunity not waived for claims pursuant to § 1983, but a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Accordingly, Valenzuela's claims against UTAustin and Dr. Clarke in his official capacity must be dismissed as a matter of law without prejudice, pursuant to FED. R. CIV. P. 12(b)(1).

### 3. Sovereign immunity has not been abrogated for Valenzuela's ADA Claim.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress expressly declared that states "shall not be immune" from suit for a violation

of the ADA. 42 U.S.C. § 12202.  However, Congress's purported abrogation must be a valid exercise of its § 5 power. *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). The Fifth Circuit recently addressed and clarified whether Title II of the ADA passes this test in *Block v. Texas Board of Law Examiners.* 952 F.3d 613 (5th Cir. 2020). In *Block*, the Fifth Circuit addressed the Supreme Court's ruling in *US v. Georgi*a, 546 U.S. 151 (2006), and noted that it established a three-part test for determining whether Title II has validly abrogated the states' sovereign immunity:

> A court must determine, on a "claim-by-claim basis": (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 617.

The Fifth Circuit went on to hold that a court must first decide whether a plaintiff has stated a claim under Title II – the first step of *Georgia* – before reaching the question of whether abrogation was proper under step three. *Id.* The court clarified that "[i]f a plaintiff alleges *no* conduct that violates Title II, the inquiry ends." *Id.* at 617, n.11. The court opined that prior to *Block,* "it was 'unclear' whether *Georgia*'s first step requires a court to determine whether the plaintiff has actually stated a claim under Title II, or merely to identify the conduct she alleges in support of her Title II claim. *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam)." *Id.* at 618, n.12. The court noted that in practice it has consistently determined whether the plaintiff stated a claim at this stage as have other sister circuit courts. *Id.* Accordingly, the Fifth Circuit clarified that there is no basis for proceeding to the second and third prongs of *Georgia* if the plaintiff has failed to allege conduct that violates Title II. *Id.* at 617-18.

Determining whether UTAustin has immunity from Valenzuela's claims under Title II, requires only that the Court apply the Rule 12(b)(6) standard to Valenzuela's allegations in assessing whether she has stated a plausible claim. *Hale*, 642 F.3d at 498. As discussed *infra,* Valenzuela provides insufficient factual support as to which aspects of UTAustin's and/or Dr. Clarke's alleged conduct violated Title II in order to meet the first step of the *Georgia* test. Thus, the Court should find that Valenzuela has alleged *no* conduct that violates Title II and dismiss this claim for lack of jurisdiction based on UTAustin's and Dr. Clarke's state sovereign immunity, pursuant to Rule 12(b)(1).

Pursuant to 42 U.S.C. § 2000d–7, states and public entities receiving federal financial assistance specifically waive their Eleventh Amendment immunity from claims under § 504 of the Rehab Act. *See Miller v. Texas Tech Univ. Health Scis. Ctr.,* 421 F.3d 342 (5th Cir. 2005) (en banc). UTAustin does not dispute the Court's jurisdiction to hear Valenzuela's claims under the Rehab Act. However, similar to her ADA claim, the Court should also dismiss Valenzuela's Rehab Act claim for failure to plead a plausible claim.[7]

### C. Valenzuela Failed to Allege Plausible Claims Under the ADA and the Rehab Act.

Valenzuela pleaded that UTAustin violated the ADA and the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Importantly, Valenzuela does not allege claims under the ADA and the Rehab Act against Dr. Clarke. *Id.*[8] Based on Valenzuela's "denials", it appears that she is claiming a mix of failure-to-

---

[7] Although both claims should be dismissed under a Rule 12(b)(6) analysis for failure to plead a plausible claim, since immunity has been waived for a Rehab Act claim, this claim is dismissed with prejudice. *See Rodriguez v. United States*, 66 F.3d 95, 98 (5th Cir. 1995) ("When a plaintiff is given an opportunity to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do so, then the district court is justified in dismissing the complaint with prejudice.").

[8] To the extent Valenzuela had alleged a Title II ADA violation against Dr. Clarke in his individual capacity, this claim cannot survive. Title II of the ADA provides for redress for discrimination against a "public entity." 42 U.S.C. § 12132. The term as defined in the statute does not include individuals. *See* 42 U.S.C. § 12131(1); *see also Caldwell v. Dallas County Sheriff*, 3:04-CV-2166-L, 2006 WL 298128, at *2 (N.D. Tex. Feb. 2, 2006) (dismissing ADA claim against individual in his individual capacity).

accommodate claims and disparate treatment claims of disability discrimination under these statutes. *Id.* at ¶¶ 28-60.

Under the ADA, discrimination claims can be proven by direct or circumstantial evidence. *McLaurin v. Waffle House, Inc.*, 178 F. Supp.3d 536, 545 (S.D. Tex. 2016) (internal quotations and citations omitted). Direct evidence of discrimination is evidence "that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* (quoting *Rachid v. Jack In The Box*, 376 F.3d 305, 310 n. 6 (5th Cir. 2004)). Valenzuela has not cited direct evidence of disability discrimination. **Dkt. 22**. In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework applies.[9] *Fahim v. Marriott Hotel Servs, Inc.,* 551 F.3d 344, 349 (5th Cir. 2008) (collecting cases and approving of the Title VII burden-shifting framework to analyze claims under Title II). *See McLaurin,* 178 F. Supp.3d at 545 (applying *McDonnell Douglas* to claims for discrimination in public accommodation asserted under Title II). Similarly, courts have applied the *McDonnell Douglas* burden-shifting framework to claims brought under the Rehab Act. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 (5th Cir. 2012) (unpublished).

The *McDonnell Douglas* framework places the initial burden on the plaintiff to make a *prima facie* showing of discrimination, which shifts the burden to the defendant to show a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. *McLaurin*, 178 F. Supp. 3d at 545. If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretext for discrimination or that disability was a motivating factor in the conduct. *Id.* "Although [the plaintiff] [does] not have to submit evidence

---

[9] The burden-shifting framework set out in *McDonnell Douglas* is not applicable to Valenzuela's failure-to-accommodate claims. *Keel v. Wal–Mart Stores, Inc.*, 2012 WL 3263575, at *13 (E.D. Tex. July 17, 2012), *adopted by* 2012 WL 3262882 (E.D. Tex. Aug. 9, 2012), *aff'd*, 2013 WL 5615712 (5th Cir. Oct. 15, 2013).

to establish a prima facie case of discrimination at [the motion to dismiss] stage, he [has] to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (citations omitted).

Under the ADA and the Rehab Act, Valenzuela must plead sufficient facts on all the ultimate elements of a *prima facie* case of disability discrimination by demonstrating: (1) she is a "qualified individual" with a disability; (2) she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UTAustin is responsible, or was otherwise subjected to discrimination by UTAustin; and (3) that such exclusion, denial of benefits or discrimination is by reason of her disability. *Block*, 952 F.3d at 618 (citing *Melton v. Dall. Area Rapid Transit,* 391 F.3d 669, 671–72 (5th Cir. 2004)). *See D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.,* 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court has equated liability standards under § 504 and the ADA, we evaluate [ ] claims under the statutes together."). A claim under the Rehab Act additionally requires in the third prong that the plaintiff was discriminated against "solely by reason of her or his disability." *Hileman v. City of Dallas,* 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)).

Valenzuela makes only conclusory allegations that UTAustin committed violations under the ADA or the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Valenzuela's subjective belief that Defendants discriminated against her because of her disability, no matter how genuinely held, cannot establish discrimination. *See Matthews v. United Bhd. of Carpenters & Joinders of Am.,* 228 F. App'x 436, 440 (5th Cir. 2007). The Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As discussed *infra*, Valenzuela has not pleaded sufficient facts to

establish a plausible claim of discrimination based on disparate treatment or a failure-to-accommodate under the ADA or the Rehab Act. Moreover, UTAustin and Dr. Clarke in his official capacity have immunity from the ADA claim. *Block,* 952 F.3d at 617, n.11.

### 1. Valenzuela has not pleaded sufficient facts that she had a disability.

Valenzuela has not pleaded sufficient facts that she suffered from a qualifying disability under the ADA or Rehab Act at the time of the alleged discriminatory actions in order to state a plausible claim for disability-discrimination or a failure-to-accommodate. Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Section 504 of the Rehab Act adopts the ADA's definition of "individual with a disability." 29 U.S.C. §§ 705(9)(B), (20)(B), and 794(a).

Major life activities are "those activities that are of central importance to daily life." *Id.* "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102. Further, to be "substantially limited" a person must be unable or significantly restricted in her ability to perform a major life activity that the average person in the general population can perform. *See EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). Significantly, the inability to perform a major life activity must occur ***at the time of the discriminatory act***. *See Hale*, 642 F.3d at 500 (holding that plaintiff failed to allege facts to allow the Court to reasonably infer that she met the requirements at the time of the alleged ADA violations) (citing *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 884 (6th Cir. 1996) (noting that an ADA plaintiff must establish "that she was a 'qualified individual with a disability' *at the time*

*of the discriminatory act*" (emphasis in original))).

The allegations in the Complaint fall far short of meeting these requirements. Although Valenzuela presented documentation of a disability on October 15, 2015, and SSD granted her specific accommodations based on the documentation at that time, she has not pleaded any facts regarding this vague disability and whether this disability was a qualifying disability *at the time* of the alleged discriminatory actions. **Dkt. 22**, at ¶ 15. *See* **EX A**, at 3-4. Additionally, while Valenzuela lists conditions that she alleges were diagnosed as a result of the incident at the Health Center in May 2017, *see* **Dkt. 22,** at ¶ 27, this is not sufficient to qualify as a disability. The Fifth Circuit has held that "[i]ndividuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment but must present evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Arredondo v. Gulf Bend Ctr.*, 252 Fed. Appx. 627, 630 (5th Cir. 2007) (internal quotations omitted) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002) (citation omitted)).

The allegations pleaded by Valenzuela fail to detail the impact of her conditions on her ability to perform major life activities *at the time* of each of the alleged discriminatory actions. For instance, while Valenzuela alleges that in the Spring of 2017, she had to quit her part time job and take incompletes in her classes to finish the limited amount of course work she was capable of completing, *Id.* at ¶ 24, she does not plead that this was the result of an alleged disability that substantially limited any major life activity. At most, the pleaded facts show that Valenzuela had an impairment at the time of the alleged ADA and Rehab Act violations. It is well established that "[m]erely having an impairment ... does not make one disabled for purposes of the ADA." *Chevron Phillips Chem. Co.,* 570 F.3d at 614.

Additionally, Valenzuela has not pleaded any facts demonstrating that *at the time* of the alleged discriminatory acts she had a record of an impairment that substantially limited one or more major life activities, or that UTAustin regarded her as having such an impairment *at the time* of the alleged discriminatory acts. 42 U.S.C. § 12102(1). Absent allegations that Valenzuela's ailments substantially limited her in the performance of a major life activity, Valenzuela has failed to state a claim for relief under subsection A of the ADA's definition of disability, *see Hale*, 642 F.3d at 501, or under Section 504 of the Rehab Act.

### 2. Valenzuela was not qualified to receive financial aid.

Among the various allegations pleaded by Valenzuela for which she alleges discrimination, she was not qualified to receive financial aid. Valenzuela pleaded that UTAustin's Office of Financial Aid challenged her eligibility for financial aid because she took a medical leave of absence from Fall 2015-August 2016, it took an improper review of her disabilities, again rejected her request for financial aid for the 2018-2019 school year and forced her to file another appeal on January 30, 2019. **Dkt. 22**, at ¶¶ 19-20, 56. As discussed *supra* in section A, Valenzuela's claim regarding UTAustin's discrete actions regarding her financial aid eligibility from Fall 2015-August 2016 are statutorily time-barred. Further, Valenzuela's allegations that her eligibility was challenged because of her medical leave of absence or alleged disability are simply not true. Valenzuela filed appeals challenging UTAustin's findings of ineligibility for financial aid based on her failure to meet the pace set out in the Satisfactory Academic Progress ("SAP") for her graduate program. *Id.* at ¶ 56. **EX B** (financial aid appeals).[10]

---

[10] Since Valenzuela refers to her January 30, 2019 appeal of UTAustin's rejection of her request for financial aid in the 2018-2019 school year and her prior appeal, these appeals are central to her allegations that UTAustin intentionally discriminated against her and are considered part of the pleadings. UTAustin is entitled to attach a copy of the appeals to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

To remain eligible for federal, state and some institutional financial aid, students must comply with UT's standards for SAP that includes a requirement to successfully complete at least 75% of credit hours attempted by a student.[11] Financial aid funding is not guaranteed. Valenzuela's pace as of May 26, 2017 was 33.3%, and her pace as of January 4, 2019 was 57.1%. **EX. B**. Valenzuela was not eligible for financial aid based on her pace in the SAP. She was not otherwise qualified. Despite her ineligibility, she was not ultimately denied financial aid. The Office of Financial Aid approved Valenzuela's financial aid eligibility subsequent to her appeals. *Id.* Notably, Valenzuela does not plead any facts that she was ultimately denied financial aid.

Valenzuela did not seek a request for accommodation regarding the pace set out in the SAP. However, even if she had requested this as an accommodation, UTAustin was not required to provide this as an accommodation because it would compromise the essential eligibility criteria for financial aid and for completion of Valenzuela's master's degree. Title II "does not require States to compromise their essential eligibility criteria for public programs." *Block,* 952 F.3d 613. Instead, only reasonable modifications are required, and "only when the individual seeking the modification is otherwise eligible for the service." *Id.* Here, Valenzuela was not eligible.

3. **Valenzuela failed to plead sufficient facts that she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UTAustin is responsible, or otherwise discriminated against, and that such exclusion or denial is by reason of her disability.**

In the event the Court finds that Valenzuela was a qualified individual with a disability at

---

[11] UTAustin requests the Court to take judicial notice of the university's guidelines for maintaining eligibility for financial aid available at https://onestop.utexas.edu/managing-costs/scholarships-financial-aid/managing-aid/maintaining-eligibility/ (last accessed July 29, 2020). "Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment." *Residents v. Zone*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017) (Harmon, J.) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011), *aff'd* 734 F. App'x. 916 (5th Cir. 2018); *see Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (finding no objection to the panel taking judicial notice of Texas agency's website when denying rehearing en banc); *see also* FED. R. EVID. 201(d) ("The court may take judicial notice at any stage in the proceeding.").

the time of each of the alleged discriminatory actions, she has not pleaded sufficient facts on the second and third elements for a plausible claim of disability discrimination. *Chhim*, 836 F.3d at 470; *Melton,* 391 F.3d at 671–72. Specifically, Valenzuela has not pleaded that she was ultimately excluded from participation in or denied the benefits of the services, programs, or activities at UTAustin, or otherwise discriminated against, and that such exclusion, denial or discrimination is by reason of her alleged disability. *See* 42 U.S.C. § 12132. Similar to the ADA, Section 504 of the Rehab Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

### a. UTAustin did not fail to make a reasonable accommodation.

Under the Rehab Act, a school is required to "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a). Such "[m]odifications may include changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted." *Id.* Likewise, "Title II requires public entities to make 'reasonable modifications in policies, practices, or procedures' for disabled individuals, unless the entity can show that a modification would 'fundamentally alter the nature' of the service or program it offers." *Block,* 952 F.3d at 618 (citing 28 C.F.R. § 35.130(b)(1)(7)(i); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454–55 & nn. 11–12 (5th Cir. 2005)).

"A public entity's failure to make a reasonable modification may satisfy the second and third prongs of the prima facie case." *Id.* (citing *Windham v. Harris Cty., Texas*, 875 F.3d 229, 235 (5th Cir. 2017)). To show that the denial of services was "by reason of" disability, Valenzuela must show that the denial was intentional. *Delano–Pyle*, 302 F.3d at 574. Additionally, "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504." *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, 641 F. App'x 423, 426 (5th Cir. 2016) (quoting *D.A.*, 629 F.3d at 455).

"To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). In a reasonable accommodation case, the ADA and Rehab Act are virtually indistinguishable. However, in the context of intentional discrimination, the Rehab Act's sole cause standard is higher than the ADA's motivating factor standard. *See Pinkerton v. Spellings*, 529 F.3d 513, 516, 519 (5th Cir. 2008). The proper causation standard under the ADA is a "motivating factor" test. *Id.*

> **(1) Valenzuela has not pleaded sufficient facts that her alleged disability and its consequential limitations were known by UTAustin.**

In the context of a failure-to-accommodate claim, intentional discrimination requires at least actual knowledge that an accommodation is necessary. *See Cadena*, 946 F.3d at 724 ("[T]his court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt."). Plaintiffs ordinarily satisfy

the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees *and* requested an accommodation in direct and specific terms. *Windham*, 875 F.3d at 237.

Valenzuela bears the burden of showing that she requested a modification and that it was reasonable. *See Hale*, 642 F.3d at 500*; see also Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) ("Reasonable accommodation is an element of a *prima facie* case of discrimination under the ADA, and [the plaintiff] bears the burden of proof of reasonableness.") (citation omitted). On October 15, 2015, SSD granted Valenzuela specific academic classroom and testing accommodations, services, and referrals. **EX. A**, at 3-4. SSD subsequently amended this on February 28, 2018. ***Id.*** at 1-2. Valenzuela alleges that UTAustin subsequently denied these previously approved accommodations. However, all of Valenzuela's failure-to-accommodate claims are time-barred as discussed *supra* in section A. **Dkt. 22**, at ¶¶ 30-34, 38-41, 43-44, 46-49.

To the extent these claims are not time-barred, Valenzuela has not sufficiently pleaded that at the time of the alleged denials of accommodations that UTAustin or its employees had knowledge of her alleged disabilities as well as the resulting limitations. Specifically, Valenzuela does not plead that Dr. Davies, Dr. Smith, or Dr. Frizzi were even aware of the classroom and testing accommodations granted by SSD in October 2015. She does not plead any facts that she requested and presented these accommodations to these professors for their review and consideration. *Id.* at ¶¶ 43-44, 46-49. Importantly, accommodations granted by SSD do not become effective until the student delivers an accommodation letter received from SSD to the professor.[12] Thus, any accommodations granted by SSD never became effective if Valenzuela did not present them to these professors.

---

[12] UTAustin requests the Court to take judicial notice of the "Student Rights and Responsibilities" available at https://diversity.utexas.edu/disability/rights-and-responsibilities/ (last accessed July 30, 2020).

While Valenzuela does plead that she presented her accommodations to Dr. Clarke for her Fall 2015 tutorial, *see* **Dkt. 22**, at ¶ 38, she does not plead any facts regarding whether she presented Dr. Clarke with an accommodation letter from SSD, whether she presented the letter within one-week after receiving it from SSD, and whether she reviewed the letter with Dr. Clarke and the use of accommodations in his tutorial as required.[13] If Valenzuela did not follow these directives, the accommodations granted by SSD were not effective for the Fall 2015 tutorial.[14] The facts as pleaded are insufficient to establish a plausible claim. SSD granted specific classroom and testing accommodations to Valenzuela on October 15, 2015. **EX. A**, at 3-4. Classes for the Fall 2015 semester in which Valenzuela took Dr. Clarke's lecture tutorial began on August 26, 2015, prior to the issuance of the SSD granted accommodations.[15] Valenzuela took a medical leave of absence from the master's program in late 2015. **Dkt. 22**, at ¶ 16.

Moreover, the facts as pleaded do not demonstrate that Dr. Clarke was aware of Valenzuela's disability and its resulting limitations at the time of the alleged denials as required to establish a failure-to-accommodate claim. *See Cadena*, 946 F.3d at 724; *See Hale*, 642 F.3d at 500. SSD did not identify Valenzuela's disabilities, nor her limitations. **EX. A**. Accordingly, Valenzuela has not sufficiently pleaded that Dr. Clarke had knowledge of her alleged disabilities as well as the resulting limitations at the time of the alleged denials. Additionally, as discussed *supra* in section A, these claims are statutorily time-barred, and as explained in more detail *infra,* some of the alleged denials of accommodations pleaded by Valenzuela were not approved by SSD. Further, the statement that Valenzuela alleges Dr. Clarke made cannot reasonably be inferred to demonstrate any alleged disability bias or animosity towards Valenzuela to constitute intentional

---

[13] *Id.*
[14] *Id.*
[15] Defendants request the Court to take judicial notice of the "Long Session 2015-2016" calendar available through UTAustin's Office of the Registrar at https://registrar.utexas.edu/calendars/15-16 (last accessed July 24, 2020).

discrimination.

Under the generally applicable rule, "[i]f the [plaintiff] fails to request an accommodation, the [public entity] cannot be held liable for failing to provide one." *Windham v. Harris County, Tex.*, 875 F.3d 229, 239 (5th Cir. 2017). Importantly, Valenzuela does not plead that she ever requested a waiver to have her undergraduate degree in French fulfill her foreign language requirement for the master's degree program. **Dkt. 22**, at ¶ 32. She does not plead that she requested accommodations from Dr. Clarke upon returning from her medical leave of absence in August 2016, nor does she plead that Dr. Clarke deliberately refused to provide or denied any requested accommodations. *Id.* at ¶ 41. And she does not plead that she requested any accommodations from UTAustin's Office of Financial Aid as it relates to her eligibility for financial aid that were deliberately refused or denied. Notably, the accommodations granted by SSD only relate to "academic" accommodations; not financial aid eligibility. **EX. A**.

When a plaintiff fails to show that she identified her disabilities as well as the resulting limitations, she can prevail in a failure-to-accommodate claim only by showing that "the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Windham*, 875 F.3d at 237 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). "Knowledge of a disability is different from knowledge of the resulting limitation." *Id.* at 238. "And it is certainly different from knowledge of the necessary accommodation." *Id.* "To prevail, [Plaintiff] must adduce evidence that all three were or should have been obvious." *Id.* at 238. Valenzuela has not pleaded any facts to support that her alleged disability, resulting limitations, and necessary reasonable accommodations were open, obvious, and apparent to Defendants. Notably, Title II only imposes an obligation to provide reasonable accommodations for *specific limitations* imposed by the claimant's disability. *See* 42 U.S.C.A.

§ 12112(b)(5)(A) (West); *see also Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Valenzuela has pleaded no facts regarding her specific limitations. Moreover, Defendants were not required to provide accommodations that amount to a fundamental alteration to the master's degree program or financial eligibility requirements. *See Block,* 952 F.3d at 618 (citing 28 C.F.R. § 35.130(b)(1)(7)(i)).

### (2) Valenzuela failed to plead sufficient facts that UTAustin failed to make reasonable accommodations.

To the extent Valenzuela's failure-to-accommodate claims are not time-barred and she sufficiently requested accommodations for them to become effective, the majority of the accommodations that Valenzuela claims she was denied were not granted by SSD.

*First,* as discussed *supra,* Valenzuela does not plead that she actually *requested* a waiver of the foreign language requirement, presented a letter of accommodation, or even requested any accommodations from Dr. Davies, Dr. Smith, or Dr. Frizzi. **Dkt. 22**, at ¶¶ 32, 43-49. She only pleads that they denied the waiver and her accommodation requests. *Id.*

*Second,* of the alleged accommodations denied by Dr. Clarke, Dr. Davies, Dr. Smith, and Dr. Frizzi, SSD only granted Valenzuela specific classroom and testing accommodations. **EX. A**. SSD did not grant Valenzuela any accommodations relating to homework assignments, assignments in general, readings, presentations, restroom breaks, or automatic attendance flexibility. *Compare* **Dkt. 22**, at ¶¶ 39, 44, 46-49, with **EX. A**. With regards to attendance, SSD only provided Valenzuela permission to discuss the possibility of flexibility with attendance. *Id.* Final determination of attendance is made by the instructor based on the structure of the course and by using the Attendance Clarification Form that is required to be completed, signed by both the student and instructor, and returned to SSD to be officially recognized. *Id.* Valenzuela does not plead any facts with regards to the Attendance Clarification Form. With regards to the

accommodations that Valenzuela pleaded she requested from Dr. Clarke, an institution is not duty bound to acquiesce in and implement every accommodation a disabled student demands. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016).

*Third,* Valenzuela does not plead sufficient facts regarding the circumstances surrounding the alleged denials of accommodations for extended time on exams, the right to record lectures, or the option of taking exams in a reduced distraction environment. **Dkt. 22**, at ¶¶ 39, 44. A plaintiff must sufficiently plead facts inferring that "a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014) (quoting *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (emphasis in original)). With regards to exams, SSD only granted one and one half the allotted time for taking tests in class unless speed is the factor being tested. **EX A**. Valenzuela does not plead whether the denial of extension of time on exams was in excess of that granted by SSD, or whether speed was the factor being tested. Valenzuela also failed to plead any facts that she arranged for an accommodation with her professor for extra time on exams and/or scheduled to take her exams in the testing space at SSD for a "reduced distraction environment" within 10-days prior to the exam as required by the Students Rights and Responsibilities.[16]

Additionally, Valenzuela has not alleged any facts as to whether any of these denials were intentional, made in bad faith, or gross mismanagement. The statements that Valenzuela alleges Dr. Clarke and Dr. Davies made to her in denying her accommodations do not amount to intentional discrimination. Specifically, Valenzuela pleaded that Dr. Clarke told her, "It would not be seemly to give a graduate student longer time or more privileges than undergraduate students.

---

[16] *See* FN 12.

Masters students must be held to a higher standard." **Dkt. 22**, at ¶ 38. Valenzuela also pleaded that Dr. Davies told her, "Lecture is only held once a week, if you miss one lecture it's like missing an entire week of content." *Id.* at ¶ 44(e). And, "You are a grown adult; you should know how to use the restroom before and after a course." *Id.* at ¶ 44(f). Defendants deny these statements. However, to the extent the Court must view the facts as pleaded in the light most favorable to the plaintiff, absent any controverting jurisdictional evidence, they do not qualify as intentional discrimination as these concerns would apply to any student – disabled or not – requesting such an accommodation. *See Campbell,* 842 F.3d at 381 (holding that a statement that a requested accommodation might give the requester an unfair advantage over other students does not qualify as intentional discrimination, as this concern would apply to any student—disabled or not—requesting such an accommodation).

Moreover, Valenzuela has not shown that UTAustin intentionally denied these benefits and was motivated to do so either by reason of or solely because of her claimed disability. Thus, she has not pleaded that any of the alleged denials were "by reason of" her alleged disability. *Delano-Pyle*, 302 F.3d at 574; *C.C.*, 641 F. App'x at 426. Importantly, although Valenzuela claims her requests for accommodations initially granted by SSD were denied by her professors, she pleaded no facts that she reported these problems to SSD as required by the Student Rights and Responsibilities.[17]

Importantly, the accommodations granted by SSD cannot alter the essential requirements of the course. Indeed, fundamental modifications in program requirements, the provision of services of a personal nature, or the provisions of aids as services which will result in undue financial hardship or lowering program standards are not required. *Southeastern Community*

---

[17] *See* FN 12.

*College v. Davis,* 442 U.S. 397, 407-12 (1979). Without more detailed facts regarding any of the alleged denials, Valenzuela has not sufficiently pleaded that UTAustin failed to provide reasonable accommodations. Accordingly, Valenzuela has failed to plead sufficient facts to establish a *prima facie* case of failure-to-accommodate under the ADA and Rehab Act. *Tips v. Regents of Tex. Tech Univ.*, 921 F. Supp. 1515, 1518 (N.D. Tex. 1996).

### b. Valenzuela has not sufficiently pleaded that she was otherwise subjected to disability discrimination by any of UTAustin's actions.

In addition to her failure-to-accommodate claims, Valenzuela also alleges that she was otherwise subjected to disability discrimination based on disparate treatment because of various discrete actions taken by UTAustin. *Melton,* 391 F.3d at 671-72; 42 U.S.C. § 12132. However, Valenzuela has not pleaded sufficient facts to demonstrate plausible claims of discrimination under the ADA and Rehab Act.

### (1) Valenzuela chose to take a leave of absence in Spring 2020.

Valenzuela pleaded that UTAustin denied her registration for final class work in January 2020, which forced her to take a leave of absence. **Dkt. 22**, at ¶ 57. On the other hand, Valenzuela pleaded that her leave of absence in the Spring of 2020 was the result of Dr. Clarke's refusal to advise her on her thesis. *Id.* at ¶ 45. When considering a Rule 12(b)(6) motion, the Court is not required to strain to accept conclusory allegations or unwarranted factual inferences. *R2 Invs. LDC*, 401 F.3d at 642. *See Gersten v. Rundle*, 833 F. Supp. 906 (S.D. Fla. 1993) (holding the court does not accept as true facts alleged in a complaint that are internally inconsistent or run counter to facts of which court can take judicial notice), *aff'd*, 56 F.3d 1389 (11th Cir. 1995). Valenzuela's inconsistent facts regarding the necessity to take the leave of absence prevent the Court from accepting them as true.

Contrary to Valenzuela's allegations, she did not attempt to register for classes in January 2020, and she took a leave of absence in Spring of 2020 because her thesis adviser, Dr. Davies, was teaching as a visiting professor at the University of Lund in Sweden until June 2020. **EX. C**.[18] Notably, registration for the Spring 2020 semester was from October 28-November 8, 2019, registration reopened on January 13-17, 2020 for continuing and readmitted students, and classes began January 21, 2020.[19] Valenzuela submitted the Authorization for Leave of Absence on January 30, 2020 – 9 days after classes started. *Id.* The authorization was approved on February 6, 2020. *Id.* Based on the jurisdictional evidence, Valenzuela's request for a leave of absence in Spring 2020 is not a result of any acts or omissions taken by UTAustin, or any discriminatory animus, but solely the acts of Valenzuela herself. Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination for this allegation.

### (2) Valenzuela is required to schedule the colloquium.

Valenzuela also pleaded that the Art History Department has refused to schedule the colloquium on her thesis since November 2018 because it is weary of her disabilities. **Dkt. 22**, at ¶¶ 53-54. On the contrary, UTAustin has not refused to schedule the colloquium for Valenzuela but has been waiting for Valenzuela to (1) complete and submit her written prospectus for her thesis; and (2) schedule the colloquium as required by the Guide to Graduate Studies in Art History.[20] The guide dictates that,

> A week before the scheduled date of the Colloquium the student presents to the Graduate Adviser for Art History (and to the four other discussants described below) a written prospectus prepared with the help of the thesis adviser; the

---

[18] Since Valenzuela refers to her leave of absence in Spring 2020, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the Spring 2020 leave of absence and correspondence regarding Valenzuela's decision to take leave to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

[19] UTAustin requests the Court to take judicial notice of the calendar for the "Spring Semester 2020" available at https://registrar.utexas.edu/calendars/19-20 (last accessed July 26, 2020).

[20] Defendants request the Court to take judicial notice of the "Guide to Graduate Studies in Art History" available at sites.utexas.edu/artgrads/files/2020/03/ARH-Graduate-Handbook1.pdf (last accessed July 17, 2020).

prospectus is submitted electronically and in hard copy to those attending the colloquium; the prospectus is e-mailed to the Graduate Coordinator.[21]

The guide further dictates that the onus of scheduling the colloquium for the thesis is on the student:

> To schedule the colloquium, first go to the on-line course schedule and note the teaching schedules for all faculty who are involved in your colloquium and black out those days/times. At that point, you can e-mail your committee with several possible dates and times. The Graduate Adviser will suggest times that are more suitable and students will be notified if this is the case. Once you have found a suitable time and date, contact the Art History administrator using "MA Colloquium Schedule Request" in the Subject line to request that you be added to the colloquium calendar. If you make any changes to your original schedule, you must notify the Art History administrative office with the most current information.[22]

Valenzuela is fully aware of the onus to schedule her colloquium. On May 17, 2019, Valenzuela submitted a draft of the written prospectus to Dr. Davies, her thesis adviser. **EX D**.[23] Dr. Davies reviewed and returned a marked-up draft to Valenzuela on May 28, 2019 and requested a timeline for completion. *Id.* On June 12, 2019, Valenzuela informed Dr. Davies that she planned to schedule her colloquium for late August 2019 and finish her thesis by December 2019. *Id.* Valenzuela did not follow-through on this.

It was not until June 2, 2020 that Valenzuela contacted Dr. Davies again to discuss scheduling her colloquium. *Id.* On July 1, 2020, Valenzuela resubmitted a revised draft of the written prospectus to Dr. Davies and indicated that she would schedule the colloquium after the "prospectus is in good shape." *Id.* Dr. Davies provided a newly marked-up draft of the written prospectus to Valenzuela on July 1, 2020 and suggested that Valenzuela corral faculty to schedule

---

[21] *See id.* at 5.

[22] *See id.* at 5.

[23] Since Valenzuela refers to UTAustin's failure to schedule her colloquium, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the communications regarding the scheduling of the colloquium to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

her colloquium as soon as possible and on everyone's calendar by the end of August 2020. *Id.* On July 1, 2020, Valenzuela agreed she would start inquiring about dates for her colloquium with her thesis committee. *Id.* On July 6, 2020, Dr. Davies suggested that Valenzuela try to hold her colloquium via Zoom. *Id.*

Having received no response, on July 23, 2020, Dr. Davies reached out to Valenzuela regarding the status of the completion of her written prospectus and scheduling the colloquium and reminded Valenzuela that she is required to submit her written prospectus to the thesis committee members at least one week before the colloquium. *Id.* Valenzuela submitted a revised draft of her written prospectus to Dr. Davies on July 24, 2020, and informed Dr. Davies she would submit the written prospectus to the thesis committee. *Id.* On July 26, 2020, Dr. Davies informed Valenzuela that she could proceed with scheduling her colloquium on July 31, 2020 because it appeared the thesis committee members were all available to attend. *Id.* Since the colloquium will be held via Zoom, Dr. Davies assisted Valenzuela in scheduling the colloquium for July 31, 2020. *Id.*

Based on the jurisdictional evidence, the delay in the scheduling of the colloquium is not a result of any acts or omissions taken by UTAustin, or any discriminatory animus, but solely the acts of Valenzuela herself that required completion of her written thesis prospectus as of July 2020 and communicating with the thesis committee to schedule the colloquium as required by the Guide to Graduate Study in Art History. *Cicalese v. Univ. of Tex. Med. Branch*, 3:17-CV-00067, 2020 WL 4012104, at *9-10 (S.D. Tex. Feb. 5, 2020) (finding that plaintiff failed to state a claim for discrimination after taking judicial notice that plaintiff had an active faculty temporary license and continued employment at UTMB). Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination.

### (3) Professor Papalexandrou did not discriminate against Valenzuela.

Valenzuela pleaded that on October 31, 2018, Professor Nassos Papalexandrou discriminated against her on the basis of her disabilities when he rejected her request for advising assistance. **Dkt. 22**, at ¶¶ 35-36. Valenzuela's conclusory allegation based on her own subjective belief that Professor Papalexandrou had no interest in assisting her because of her disabilities is disingenuous and not evidence of discrimination. *See Matthews,* 228 F. App'x at 440. Professor Papalexandrou, the father of a special needs child, declined to participate in Valenzuela's colloquium because he did not want to commit time and energy to the project because she had avoided any contact with him during her studies and he did not know her as a student. **EX. E.**[24] Valenzuela's attempt to twist Professor Papalexandrou's words against him have no support. Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination based on the disputed jurisdictional facts.

### (4) Valenzuela did not opt-in to the graduate student website.

Valenzuela further pleaded that UTAustin discriminated against her by not including her on the website showcasing each of the Art History graduate students. **Dkt. 22**, at ¶ 69. Despite Valenzuela's own subjective belief, which is not sufficient to establish discrimination, she has not pleaded any facts to show UTAustin was motivated by her disability or solely because of her disability left her off of the website. *See Matthews,* 228 F. App'x at 440. On the contrary, graduate students must opt-in to be included on the website. **EX F.**[25] Inclusion on the website is not automatic. *Id.* Valenzuela pleaded no facts suggesting that she requested her information to be

---

[24] Since Valenzuela refers to the email received from Professor Papalexandrou, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of this email to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

[25] Since Valenzuela refers to the website and UTAustin's failure to include her on it, is central to the allegations in her Complaint. UTAustin is entitled to attach a declaration from the individual in charge of maintaining this website to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

included on the website and that UTAustin after receiving this request intentionally discriminated against her by leaving her off the website. Accordingly, Valenzuela has not pleaded a plausible claim of intentional discrimination as it relates to this allegation.

### (5) Dr. Clarke and UTAustin have gone above and beyond in assisting Valenzuela with obtaining her master's degree.

Valenzuela pleaded that Dr. Clarke remains discriminating against her through his position as Graduate Advisor for UTAustin's Art History program, and that despite her readmission to the graduate program, UTAustin and Dr. Clarke continue to treat Valenzuela as if she is not really a part of the Art History program. **Dkt. 22,** at ¶¶ 42, 70. Valenzuela pleaded no facts to support what actions if any that Dr. Clarke and/or UTAustin have taken against her that she alleges is discriminatory. In fact, Valenzuela does not even plead that they have done anything that amounts to disability discrimination by allegedly treating her as if she is not part of the Art History program. These vague, conclusory allegations are not sufficient to support a plausible claim of disability discrimination.

\*\*\*

In sum, Valenzuela has not alleged conduct that would plausibly violate Title II of the ADA and the Rehab Act. Valenzuela did not plead sufficient facts that she was denied reasonable accommodations by UTAustin, nor that her alleged disability was a motivating factor or sole factor in any of the alleged acts or omissions taken by UTAustin or Dr. Clarke. *Shurb v. Univ. of Tex. Health Sci. Ctr. at Houston-Sch. of Med.*, 63 F. Supp. 3d 700, 708 (S.D. Tex. 2014). Other than the alleged denied waiver request to satisfy the foreign language component (which is statutorily time-barred and fails for other reasons as stated *supra*), Valenzuela has not pleaded the existence of any non-disabled or less disabled graduate student, or graduate student with the same disabilities to whom UTAustin treated more favorably. Nothing in the Complaint or any alleged statements

implies that there was any discriminatory animus by UTAustin or Dr. Clarke.

Instead, UTAustin has granted Valenzuela reasonable accommodations and has gone above and beyond to assist Valenzuela in reaching her goal to obtain her master's degree in Art History. Accordingly, no reasonable fact finder could derive discriminatory intent based on the allegations as pleaded and the jurisdictional evidence. Given that Valenzuela has pleaded no conduct in violation of Title II, under the first step in *Georgia*, there is no abrogation of sovereign immunity requiring dismissal for lack of jurisdiction without prejudice. *Block*, 952 F.3d 613. And her claims under the Rehab Act should be dismissed for lack of jurisdiction with prejudice for failure to state a claim.

### D. Valenzuela Lacks Standing.

Additionally, Valenzuela has not established standing for several of her claims. "[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). To establish standing, "the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015). The party seeking to invoke federal jurisdiction bears the burden of establishing these elements. *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). Valenzuela has wholly failed to meet all three aspects of legal standing.

#### 1. Valenzuela suffered no injury in fact.

Valenzuela failed to articulate any violations or injuries with regards to the following allegations:

- despite following the rules presented to her, UTAustin has not told her whether a person with her disabilities will be allowed to finish her studies. **Dkt. 22**, at ¶ 60;
- in April 2018, Valenzuela was still having to fight with the Art History Department as to when and what courses she would be allowed to proceed with for the development of her

thesis. *Id.* at ¶ 29;

- after returning from her medical leave of absence in August 2016, Valenzuela was forced to select only "independent studies" classes with Dr. Clarke to avoid the impact of his refusal to allow accommodations. *Id.* at ¶ 41; and
- UTAustin informed her on April 23, 2020 that it would review her request to return and complete her course work. *Id.* at ¶ 59.

"At the pleading stage, allegations of injury are liberally construed," but allegations of conjectural or hypothetical injury are not sufficient to establish standing. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350 (2006)).

Valenzuela has not pleaded any facts regarding any injuries she sustained as a result of these allegations. Importantly, Dr. Clarke's tenure as the Graduate Adviser for Art History began on July 22, 2019, thus any allegations regarding actions or omissions taken by Dr. Clarke in this position prior to July 22, 2019, are not valid. While Valenzuela pleaded that she was forced to select only "independent studies" classes with Dr. Clarke, this is a hypothetical injury because she did not suffer an injury in fact. As pleaded, Valenzuela did not register and take any non-independent studies classes with Dr. Clarke in which she requested, and he subsequently denied her requests for accommodations.

With regards to her request for readmission into the master's program, Valenzuela pleaded that "[o]n April 9, 2020, Plaintiff Amanda informed Defendant UTAustin that she wished to re-apply for the Fall of 2020 so that she could finish her coursework and complete her Colloquium." **Dkt. 22**, at ¶ 58. Valenzuela pleaded that she was readmitted to the program after the filing of the lawsuit. *Id.* at ¶ 70. Valenzuela was informed on May 8, 2020 that the faculty had voted to readmit her to the program. **EX G.**[26] UTAustin considered and readmitted Valenzuela to the master's

---

[26] Since Valenzuela refers to her application for re-admission to the master's program, it is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the letter to Valenzuela granting her application for re-admission to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

program within one month of her request. Valenzuela sustained no injury with regards to this allegation and in fact this allegation is moot. Since Valenzuela has not sustained any injury with regards to these allegations, she cannot satisfy the second element to establish standing – that any injuries are fairly traceable to Defendants.

### 2.  Valenzuela has no Redressability.

Valenzuela cannot show that any of her alleged injuries can be redressed by a favorable decision. It must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Even if Valenzuela had pleaded sufficient facts to support a plausible claim of disability discrimination, she "may only recover compensatory damages upon a showing of *intentional* discrimination." *Smith,* 956 F.3d at 318 (emphasis added) (quoting *Delano–Pyle*, 302 F.3d at 574); *accord Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). The Fifth Circuit has relied "on the widely accepted principle that intent requires that the defendant at least have actual notice." *Id.* (quoting *Miraglia*, 901 F.3d at 575). None of the allegations indicate that there was any *intention* by UTAustin to discriminate against Valenzuela because of her alleged disability. Thus, Valenzuela is not entitled to recover any compensatory damages.

While it appears that Valenzuela added Dr. Clarke as a party in the latest Complaint in order to seek equitable damages through *Ex parte Young,* she has not alleged that she is bringing a claim against Dr. Clarke under the ADA or the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Accordingly, Valenzuela has not properly alleged a claim through *Ex parte Young* and may not recover any equitable damages in the form of prospective injunctive relief. In the event Valenzuela requests equitable relief from Dr. Clarke in his individual capacity, this relief is not available because a plaintiff does not have Article III standing with respect to parties who are powerless to remedy the

alleged injury. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir.2001) (en banc). Moreover, as discussed *infra,* Dr. Clarke has qualified immunity from any claims brought against him in this capacity.

### E. Valenzuela Failed to Sufficiently Serve Dr. Clarke in his Individual Capacity.

Service of process on an individual under federal law must be made by delivering a copy of the summons and complaint to the individual personally, or by leaving copies at the individual's home, or delivering the service documents to an agent of the defendant authorized to accept service by appointment or by law. *See* FED. R. CIV. P. 4(e)(2); *see also Hassell v. U.S.,* 203 F.R.D. 241, 245-46 (N.D. Tex. 1999). Rule 4(e)(1) permits a plaintiff seeking to serve process in a federal action to "follow[] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* FED. R. CIV. P. 4(e)(1). Service on an individual under Texas law is made by delivering to the defendant, in person, a true copy of the citation, or by registered or certified mail served by an officer authorized by Rule 103. *See* TEX. R. CIV. P. 106(a)(1)-(2); TEX. R. CIV. P. 103; *Delta Steamships Lines, Inc. v. Albano,* 768 F.2d 728, 730 (5th Cir. 1985).

On July 20, 2020, Valenzuela requested the Court to issue summons to Dr. Clarke at UTAustin. **Dkt. 25**. To date, Dr. Clarke has not received this summons. Should the Court find that Valenzuela has sued Dr. Clarke in his individual capacity, service of process on Dr. Clarke via certified mail to UTAustin is insufficient. Service must be made by delivering a copy of the summons personally to Dr. Clarke via a process server as discussed *supra.* Dr. Clarke does not have an agent to accept service of process via certified mail in his individual capacity. Accordingly, service of process on Dr. Clarke in his individual capacity is insufficient under both federal and state law and must be dismissed without prejudice, pursuant to Rule 12(b)(5). However, it would be futile for the Court to allow any claims to proceed against Dr. Clarke in his individual capacity

because Valenzuela cannot plead a plausible claim against him requiring dismissal with prejudice, pursuant to Rule 12(b)(6) as discussed *infra*.

### F.  Dr. Clarke has Qualified Immunity in his Individual Capacity.

To the extent that Valenzuela has sued Dr. Clarke in his individual capacity, he raises the defense of qualified immunity, which may be properly asserted in a Rule 12(b)(6) motion. Qualified immunity bars Valenzuela's § 1983 claim for the alleged violation of equal protection rights under the Fourteenth Amendment of the U.S. Constitution against Dr. Clarke. *See, e.g., Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (qualified immunity under § 1983)).

#### 1.  Qualified Immunity Standard.

When a defendant raises a defense of qualified immunity in a 12(b)(6) motion, they are "entitled to dismissal before the commencement of discovery," unless the plaintiff alleges a violation of established law. *See Morgan v. Swanson*, 610 F.3d 877, 882 (5th Cir. 2010), opinion withdrawn and superseded on other grounds, 627 F.3d 170 (5th Cir. 2010) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity not only protects officials from liability in civil actions, it also protects public officials from having to withstand the burdens of broad ranging discovery and the burdens of trial. *Mitchell,* 472 U.S. at 511. Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Further, qualified immunity allows governmental officials to exercise their official duties with independence and without fear of personal liability and harassing lawsuits against them. *See id.*; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Elliott v. Perez*, 751 F.2d 1472, 1476-77 (5th Cir. 1985). By providing governmental officials and employees with the ability to reasonably

anticipate when their acts or omissions may give rise to liability damages, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986). If the officials act in an objectively reasonable manner, then their immunity is not defeated. *Id.* Qualified immunity applies even if a government official commits "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

Once a defendant pleads a good-faith entitlement to qualified immunity, "the burden shifts to the plaintiff to rebut it." *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Abrogation of qualified immunity requires a two-tier analysis. Plaintiff must show that the evidence, viewed in the light most favorable to him, is sufficient to establish a genuine dispute "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011); *see also Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013); *Cutler v. Stephen F. Austin State University*, 767 F.3d 462, 469 (5th Cir. 2014). This Court has discretion to address either prong of the test first. *See Pearson*, 555 U.S. at 236.  At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Chao v. Dars of Tex.*, 4:15CV169, 2015 WL 6522818, at *7 (E.D. Tex. Oct. 27, 2015) (citing *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original)).

As discussed *supra,* Valenzuela's claims of constitutional violations through § 1983 are time-barred and/or fail to provide a right to relief. However, even if these claims survived, Valenzuela has not met her burden to rebut qualified immunity under the first prong of the two-tier analysis in *Ashcroft*.

## 2. Dr. Clarke's conduct, as pleaded by Valenzuela, is subject to qualified immunity.

Valenzuela asserts claims against Dr. Clarke for actions he took within the course and scope of his employment with UTAustin. Dr. Clarke at all times acted in good faith and pleads qualified immunity to Valenzuela's claims. Because Valenzuela asserts discrete claims against Dr. Clarke, she must overcome qualified immunity as to all of them. This Court must address Valenzuela's alleged violations separately to determine whether qualified immunity applies.

The facts alleged by Valenzuela do not establish the violation of a constitutional right under the Fourteenth Amendment. Moreover, in order to satisfy the first prong of the qualified immunity analysis, a plaintiff may not simply assert that a federal constitutional or statutory violation has occurred; rather, the plaintiff must articulate facts in a highly particularized manner, which address the specific conduct of the state official whose behavior allegedly amounts to a constitutional injury. *Wernecke v. Garcia,* 591 F.3d 386, 392-93 (5th Cir. 2009). Valenzuela has failed to do this. Valenzuela has not alleged any specific facts to show that Dr. Clarke violated her equal protection rights under the Fourteenth Amendment. Valenzuela merely makes conclusory allegations and requests the Court to infer that Dr. Clarke intentionally discriminated her. Such conclusory allegations with no specific facts do not amount to a constitutional violation and do not waive the qualified immunity to which Dr. Clarke is entitled. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570. Valenzuela's claims lack facial plausibility that do not allow the Court to draw the reasonable inference that Dr. Clarke is liable for the misconduct alleged. *Id*.

Accordingly, Valenzuela has not abrogated Dr. Clarke's qualified immunity under the first prong of the two-part analysis in *Iqbal*. The Court should dismiss Valenzuela's § 1983 claim against Dr. Clarke in his individual capacity with prejudice, pursuant to FED. R. CIV. P. 12(b)(6).

### G. Punitive Damages Should be Dismissed as a Matter of Law.

Although not a true cause of action, Valenzuela's fourth claim seeks punitive damages against Defendants. **Dkt. 22**, at ¶ 98. To the extent this Court allows any claim to proceed, punitive damages are not recoverable as a matter of law against UTAustin and Dr. Clarke in his official capacity. *See Barnes v. Gorman,* 536 U.S. 181 (2002) (holding that punitive damages may not be awarded in private actions brought to enforce Title VI, section 202 of the ADA, or section 504 of the Rehabilitation Act); *see also Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 815 (E.D. Tex. 2013) (holding that punitive damages against a municipality and other governmental entities are not recoverable under § 1983) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981)). Additionally, because Dr. Clarke is also entitled to qualified immunity from Valenzuela's § 1983 claim, Valenzuela cannot recover punitive damages against him in this capacity.

### V. CONCLUSION

Valenzuela's allegations are devoid of any specific objective incidents of discrimination based on her alleged disability, or any incidents that were motivated by or solely because of her alleged disability. Rather, Valenzuela asks the Court to infer this discrimination based on her complaints and/or misunderstanding of the procedures for obtaining her master's degree as set out in the Guide to Graduate Studies in Art History and the financial aid eligibility requirements. But the Complaint offers merely "labels and conclusions" and only "tenders naked assertions devoid of further factual enhancement" that are insufficient to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Clearly, the basis of Valenzuela's discrimination claims is her subjective belief that UTAustin discriminated against her because of her alleged disability; however, Valenzuela's subjective belief, no matter how genuinely held, cannot establish discrimination. *See Matthews,* 228 F. App'x at 440. Valenzuela failed to plead sufficient factual

content "that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Id.*

Accordingly, the Court should dismiss her disability discrimination claims against UTAustin and Dr. Clarke in his official capacity under Title II of the ADA and her § 1983 claims without prejudice based on sovereign immunity, pursuant to Fed. R. Civ. P. 12(b)(1); dismiss her discrimination claims against UTAustin and Dr. Clarke in his official capacity under the Rehab Act with prejudice for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and dismiss all claims with prejudice against Dr. Clarke in his individual capacity for failure to state a claim to abrogate his qualified immunity, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants further request any and all such other relief to which they may show themselves entitled, including costs and attorney's fees.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

 /s/  Summer R. Lee
**SUMMER R. LEE**
Texas Bar No. 24046283
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station

Austin, Texas 78711-2548
512) 475-4031/FAX (512) 474-2697
summer.lee@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS THE**
**UNIVERSITY OF TEXAS AT AUSTIN**
**AND JOHN CLARKE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served through CM/ECF filing, on this the **3rd day of August, 2020**, upon the following individual:

Terry P. Gorman, Esq.
Gorman Law Firm, pllc
tgorman@school-law.co
*Attorney for Plaintiffs*

<u>/s/ Summer R. Lee</u>
**SUMMER R. LEE**
Assistant Attorney General

---