IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:19-cv-01202-RP |
| THE UNIVERSITY OF TEXAS | § | |
| AT AUSTIN, et al., | § | |
| *Defendants.* | | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND-AMENDED COMPLAINT**

Defendants, The University of Texas at Austin ("UTAustin") and John Clarke, PhD ("Dr. Clarke"), sued in his official capacity[1] (collectively, "Defendants"), file this Motion to Dismiss, pursuant to FED. R. CIV. PROC. 12(b)(1), 12(b)(5), and 12(b)(6), and respectfully show the Court:

## I.   INTRODUCTION

Plaintiff Amanda Valenzuela ("Valenzuela") alleges in her Second Amended Complaint ("Complaint") (**Dkt. 22**) that UTAustin committed various discrete and intentional discriminatory acts against her on the basis of her alleged disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), Title II of the Americans with Disabilities Act ("ADA"), and violations of her equal protection rights under 42 U.S.C. § 1983. *Id.* The Court should dismiss Valenzuela's claims against Defendants for the following reasons. *First,* the majority of the claims under the ADA, Rehab Act, and § 1983 are barred by the two-year statute of limitations. *Second,* UTAustin and Dr. Clarke in his official capacity have state sovereign immunity from the ADA and § 1983 claims. *Third,*

---

[1] Valenzuela does not state whether Dr. Clarke is sued in his official or individual capacity, but all references appear to indicate that he is sued in his official capacity only. *See, e.g.,* **Dkt. 22**, at ¶ 6 ("may be served with summons at Clarke's place of employment"); ¶ 42 ("Clarke remains discriminating against Amanda through his position as the Graduate Advisor for Defendant UTAustin's Art History program."). Indeed, the only cause of action that Valenzuela appears to allege against Dr. Clarke is for a Section 1983 violation. *See id.* at ¶ 92 ("The administrators implementing Defendants' Actions Against Amanda were state actors, exercising their delegated duties acting under the color of state law…").

the Rehab Act claims must be dismissed for failure to state a claim. *Fourth,* Valenzuela lacks standing. *Fifth,* Valenzuela's claims against Dr. Clarke in his individual capacity must be dismissed for insufficient service of process. *Sixth,* Dr. Clarke has qualified immunity for any claims asserted against him in his individual capacity. *Finally*, punitive damages are not recoverable. Defendants respectfully request dismissal of all claims in their entirety.

## II.  FACTUAL ALLEGATIONS

Defendants dispute the recitation of facts contained in the Complaint; however, for ease of review at this stage in the litigation the facts asserted in the Complaint are briefly summarized. Valenzuela is a student at UTAustin working on her master's degree in Art History. **Dkt. 22,** at ¶ 9. On October 15, 2015, Valenzuela presented documentation of a disability and registered with the Division of Diversity and Community Engagement – Services for Students with Disabilities ("SSD"). *Id.* at 30. SSD subsequently granted her classroom, testing, and service accommodations. **EX. A** (SSD acceptance of services).[2] In late 2015, Valenzuela requested a medical leave of absence, UTAustin approved the request, and she took leave from her studies at UTAustin from Fall 2015 to August 2016. *Id.* at ¶¶ 16-17. Upon her return, Valenzuela claims that her "troubles with Defendant UTAustin increased dramatically." *Id.* at ¶ 18. Valenzuela alleges that UTAustin violated the ADA, the Rehab Act, and her equal protection rights under the Fourteenth Amendment (via § 1983) when it made several alleged "Denials" between 2015 to the present. *Id.* at ¶¶ 28-60, 69-70.[3] Valenzuela also alleges that UTAustin improperly challenged her financial aid from Fall 2015-August 2016. *Id.* at ¶¶ 19-20.

---

[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004). Valenzuela attached as Exhibit 1 to her Complaint the verification of services granted by SSD. **Dkt. 22,** at 30. These accommodations are also central to her claims throughout the Complaint. *Id.* at ¶¶ 1, 15, 37-39, 43-49. Accordingly, Defendants are entitled to attach a copy of the actual acceptance of services.

[3] Valenzuela pleaded that a physician at the Health Center committed medical malpractice in February 2017 when he recommended a medication regimen of toxic levels of iodine. **Dkt. 22,** at ¶ 21. Valenzuela further pleaded that UTAustin is immune from the damages caused by this injury. *Id.* at ¶ 27. Valenzuela has not brought a medical malpractice claim.

### III. STANDARD OF REVIEW

**A. Legal Standards.**

Defendants challenge Valenzuela's claims under Rule 12(b)(1) for lack of subject-matter jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim. Valenzuela has the burden of proof to demonstrate that the Court should not dismiss her claims under these legal standards.

### IV. ARGUMENT AND AUTHORITIES

**A. The Majority of Valenzuela's Claims are Barred by the Statute of Limitations.**

Based on the pleadings, multiple claims brought by Valenzuela should be dismissed with prejudice as barred by the statute of limitations. A limitations defense supports a Rule 12(b)(6) dismissal when (1) it is evident from the plaintiff's pleadings that the action is barred and (2) the pleadings fail to raise some basis for tolling or the like. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted). Here, Valenzuela brought claims under the ADA, Rehab Act, and § 1983 in which a two-year statute of limitations period is recognized. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (recognizing two-year statute of limitations for Rehab Act and Title II ADA claims); *Piotrowski v. City of Houston,* 51 F.3d 512, 515 n. 5 (5th Cir. 1995) (Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims).

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'" *King–White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Frame,* 657 F.3d at 238). "[U]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A]n injury occurs (and a complete and present cause of action arises) under

Title II [and the Rehab Act] when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity." *Frame,* 657 F.3d at 238.[4]

### 1. The majority of the actions are time-barred.

Although Valenzuela fails to plead when most of the alleged discriminatory acts were committed, piecing together separate allegations, the majority of her claims are statutorily time-barred for failure to timely file her lawsuit bringing such claims. **Dkt. 22**. *First*, the Court should dismiss Valenzuela's claim that UTAustin challenged her eligibility for financial aid after she returned from her medical leave of absence in August 2016, and that UTAustin improperly reviewed her disabilities. *Id.* at ¶¶ 19-20. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued by February 2017 at the latest. *Id.* at ¶ 21. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by February 2019. Valenzuela first asserted this claim in Plaintiff's Original Petition filed on December 11, 2019. **Dkt. 1,** at ¶ 18-20. Accordingly, this claim is statutorily time-barred.

*Second,* the Court should dismiss Valenzuela's claim that in April 2018 she was still having to fight with the Art History Department as to when and what courses she would be allowed to proceed with for the development of her thesis. **Dkt. 22,** at ¶ 29. Similarly, the Court should also dismiss Valenzuela's claim that in April 2018 the Art History Department required her to take coursework in Italian for her thesis that was not required of non-disabled students and that it denied her request for a waiver. *Id.* at ¶¶ 30-34. Valenzuela's Complaint is vague (perhaps intentionally so) on the precise date in April 2018 that these two alleged discriminatory acts occurred. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued on a date uncertain in April 2018. Thus, Valenzuela was required to file her lawsuit

---

[4] Congress intended that Title II of the ADA "work in the same manner as Section 504." *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000). "Jurisprudence interpreting either statute is generally applicable to both." *Id. See Delano-Pyle v. Victoria County,* 302 F.3d 567, 574 (5th Cir. 2002).

bringing these claims within two-years by a date uncertain in April 2020. These two claims were initially asserted in Plaintiff's First Amended Petition filed on April 28, 2020. **Dkt. 12**. Despite being given two prior opportunities, Valenzuela has not provided specific dates with regards to many of the alleged adverse employment actions, including this one. If no equitable basis exists to toll limitations, a plaintiff's failure to provide specific dates of discriminatory actions acts as a time bar to these complained-of events. *See Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288 n.3 (5th Cir. 2008).

*Third,* the Court should dismiss Valenzuela's claim that Dr. Clarke denied her accommodations in the 2015 Fall tutorial. **Dkt. 22**, at ¶¶ 38-40. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued by early 2015. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by early 2017. Valenzuela first asserted this claim in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* at ¶¶ 38-40. Thus, this claim is statutorily time-barred. *Fourth,* the Court should dismiss Valenzuela's claim that after returning from her medical leave of absence in August 2016, she was forced to select only "independent studies" classes with Dr. Clarke to avoid the impact of his refusal to allow accommodations. *Id.* at ¶ 41. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued in August 2016. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by August 2018. Valenzuela first asserted this claim in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, this claim is statutorily time-barred. *Fifth,* the Court should dismiss Valenzuela's claim that in the Fall of 2015, Fall of 2016, and Fall of 2017, Dr. Davies denied her certain accommodations granted by SSD in three seminars. *Id.* at ¶¶ 43-44. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on these alleged discrete acts accrued from the Fall of 2015 to Fall of 2017. Thus, Valenzuela was required to file her lawsuit bringing these claims within two-years of each accrual and

by Fall 2017 at the latest for the alleged denials. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, these claims are statutorily time-barred.

**Sixth,** the Court should dismiss Valenzuela's claim that in the Fall of 2015 and Fall of 2016, Dr. Smith denied her certain accommodations granted by SSD in her class Art Historical Methods. *Id.* at ¶¶ 46-48. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued in the Fall of 2015 and Fall of 2016. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years of each accrual and by Fall 2016 at the latest for the alleged denials. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, these claims are statutorily time-barred. **Finally,** the Court should dismiss Valenzuela's claim that in the Spring of 2018, Dr. Frizzi denied her certain accommodations granted by SSD in her beginning Italian class. *Id.* at ¶ 49. By Valenzuela's own allegations, her claims under the ADA, Rehab Act, and § 1983 based on this alleged discrete act accrued in the Spring of 2018. Thus, Valenzuela was required to file her lawsuit bringing this claim within two-years by Spring of 2020. Valenzuela first asserted these claims in Plaintiff's Second-Amended Complaint filed on July 13, 2020. *Id.* Thus, this claim is statutorily time-barred.

All of the above claims should be dismissed by the Court with prejudice, pursuant to Rule 12(b)(6). *See, e.g., Price v. City of San Antonio, Tex.*, 431 F.3d 890, 895 (5th Cir. 2005) (upholding district court's dismissal of § 1983 claim as being time-barred); *Caldwell v. Dallas County Sheriff*, 3:04-CV-2166-L, 2006 WL 1416734, at *2 (N.D. Tex. May 22, 2006) (dismissal of Title II ADA and § 1983 claims with prejudice as time-barred, pursuant to FED. R. CIV. P. 12(b)(6)).

### 2. The pleadings fail to raise an equitable basis for tolling.

Recognizing that some of her claims may fall outside the statute of limitations, Valenzuela pleaded that "the compilation of, and the continuation of, such wrongful acts and omissions have resulted in the continuing state of *limbo*…" *Id.* at ¶ 2. Unless there is an equitable exception to the

limitations period, asserting claims of discrete discriminatory acts that fall within the statutory time period will not revive claims for acts that fall outside of the time period because the limitations period runs from the moment a plaintiff's claim accrues. *King–White*, 803 F.3d at 762; *Frame,* 657 F.3d at 238. A "state of limbo" is not a recognized equitable exception. Moreover, Valenzuela created this limbo.

**B.  Defendants are Entitled to Sovereign Immunity under the ADA and § 1983.**

Eleventh Amendment Immunity[5] protects state entities from private causes of action brought in federal courts unless Congress has validly abrogated the state's immunity to a federal claim, or the state has consented to suit. *Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996). Valenzuela bears the burden of pleading and establishing federal subject-matter jurisdiction by alleging and demonstrating a valid waiver or abrogation of sovereign immunity. *Id.*

**1.  UTAustin and Dr. Clarke in his official capacity are State entities.**

There is no dispute that UTAustin is a state entity. Valenzuela acknowledges that UTAustin "is a public university operating in the State of Texas" and that UTAustin is "owned and operated by the State of Texas." **Dkt. 22**, at ¶¶ 5, 81.[6] As a state entity, UTAustin is entitled to state sovereign immunity under the Eleventh Amendment. This also extends to Dr. Clarke in his official capacity. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). Valenzuela must not only show her claims are plausible, she must also overcome immunity to suit. She makes no claim that Texas has waived, or that Congress has abrogated sovereign immunity as to her ADA and § 1983 claims. They have not.

---

[5] The Eleventh Amendment of the United States Constitution codifies the common-law doctrine of state sovereign immunity with respect to suits brought in federal courts. *Alden v. Maine*, 527 U.S. 706, 712-713 (1999). Although the Eleventh Amendment does not "create" a state's entitlement to sovereign immunity, courts often use the terms "Eleventh Amendment Immunity" and "sovereign immunity" interchangeably in reference to a state's immunity from federal subject-matter jurisdiction. *See Mayer ex. rel. Benzing v. Tex.*, 410 F. 3d 236, 240-41 (5th Cir. 2005).

[6] *See* TEX. GOV'T CODE § 572.002(10)(B) (defining a state agency to include a university system or institution of higher education). *See also*, TEX. EDUC. CODE § 67.02 (defining The University of Texas at Austin); TEX. EDUC. CODE § 65.02 (establishing that UTAustin is part of The University of Texas System).

### 2.   Sovereign immunity has not been abrogated for § 1983 Claims.

The vehicle for bringing a violation of equal protection rights pursuant to the Fourteenth Amendment to the U.S. Constitution is 42 U.S.C. § 1983. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). "Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, and 1985." *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1030 (S.D.Tex.1996). *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983."). Moreover, the State of Texas has not consented to this type of suit. *Aguilar,* 160 F.3d at 1054. Not only is Texas's sovereign immunity not waived for claims pursuant to § 1983, but a state nor its officials acting in their official capacities are "persons" under § 1983. *Will,* 491 U.S. at 71. Accordingly, Valenzuela's claims against UTAustin and Dr. Clarke in his official capacity must be dismissed as a matter of law without prejudice, pursuant to FED. R. CIV. P. 12(b)(1).

### 3.   Sovereign immunity has not been abrogated for ADA Claims.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[7] Congress expressly declared that states "shall not be immune" from suit for a violation of the ADA. 42 U.S.C. § 12202. However, Congress's purported abrogation must be a valid exercise of its § 5 power. *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). The Fifth Circuit recently addressed and clarified whether Title II of the ADA passes this test in *Block v. Texas Board of Law Examiners.* 952 F.3d 613 (5th Cir. 2020). In *Block*, the Fifth Circuit addressed the Supreme Court's ruling in *US v. Georgi*a, 546 U.S. 151 (2006), and noted that it established a three-part test for determining whether Title II has validly

---

[7] Similarly, Section 504 of the Rehab Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

abrogated the states' sovereign immunity:

> A court must determine, on a "claim-by-claim basis": (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 617.

The Fifth Circuit went on to hold that a court must first decide whether a plaintiff has stated a claim under Title II – the first step of *Georgia* – before reaching the question of whether abrogation was proper under step three. *Id.* The court clarified that "[i]f a plaintiff alleges *no* conduct that violates Title II, the inquiry ends." *Id.* at 617, n.11. It clarified that there is no basis for proceeding to the second and third prongs of *Georgia* if the plaintiff has failed to allege conduct that violates Title II. *Id.* at 617-18.

Determining whether UTAustin has immunity from Valenzuela's claims under Title II, requires only that the Court apply the Rule 12(b)(6) standard to Valenzuela's allegations in assessing whether she has stated a plausible claim. *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). As discussed *infra*, Valenzuela provides insufficient factual support as to which aspects of UTAustin's and/or Dr. Clarke's alleged conduct violated Title II in order to meet the first step of the *Georgia* test. Thus, the Court should find that Valenzuela has alleged *no* conduct that violates Title II and dismiss this claim for lack of jurisdiction based on UTAustin's and Dr. Clarke's state sovereign immunity, pursuant to Rule 12(b)(1). UTAustin does not dispute the Court's jurisdiction to hear claims under the Rehab Act. However, the Court should dismiss the Rehab Act claim for failure to plead a plausible claim.

**C. Valenzuela Failed to Allege Plausible Claims Under the ADA and the Rehab Act.**

Valenzuela pleaded that UTAustin violated the ADA and the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Importantly, Valenzuela does not allege claims under the ADA and the Rehab Act against Dr.

Clarke. *Id.*[8] Based on Valenzuela's "denials", it appears that she is claiming a mix of failure-to-accommodate claims and disparate treatment claims of disability discrimination under these statutes. *Id.* at ¶¶ 28-60.

Under the ADA, discrimination claims can be proven by direct or circumstantial evidence. *McLaurin v. Waffle House, Inc.*, 178 F. Supp.3d 536, 545 (S.D. Tex. 2016) (internal quotations and citations omitted). Valenzuela has not cited direct evidence of disability discrimination. **Dkt. 22**. In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework applies.[9] *Fahim v. Marriott Hotel Servs, Inc.,* 551 F.3d 344, 349 (5th Cir. 2008) (collecting cases and approving of the Title VII burden-shifting framework to analyze claims under Title II). *See Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 (5th Cir. 2012) (unpublished) (applying *McDonnell Douglas* for claims brought under Rehab Act). Under the ADA and the Rehab Act, Valenzuela must plead sufficient facts on all the ultimate elements of a *prima facie* case of disability discrimination by demonstrating: (1) she is a "qualified individual" with a disability; (2) she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UTAustin is responsible, or was otherwise subjected to discrimination by UTAustin; and (3) that such exclusion, denial of benefits or discrimination is by reason of her disability. *Block*, 952 F.3d at 618 (citing *Melton v. Dall. Area Rapid Transit,* 391 F.3d 669, 671–72 (5th Cir. 2004)).[10] *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (holding that at dismissal stage plaintiff must plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case

---

[8] To the extent Valenzuela had alleged a Title II ADA violation against Dr. Clarke in his individual capacity, this claim cannot survive. Title II of the ADA provides for redress for discrimination against a "public entity." 42 U.S.C. § 12132. The term as defined in the statute does not include individuals. *See* 42 U.S.C. § 12131(1); *see also Caldwell v. Dallas County Sheriff*, 3:04-CV-2166-L, 2006 WL 298128, at *2 (N.D. Tex. Feb. 2, 2006) (dismissing ADA claim against individual in his individual capacity).

[9] The burden-shifting framework set out in *McDonnell Douglas* is not applicable to Valenzuela's failure-to-accommodate claims. *Keel v. Wal–Mart Stores, Inc.,* 2012 WL 3263575, at *13 (E.D. Tex. July 17, 2012), *adopted by* 2012 WL 3262882 (E.D. Tex. Aug. 9, 2012), *aff'd,* 2013 WL 5615712 (5th Cir. Oct. 15, 2013).

[10] Claims under § 504 and the ADA are evaluated together. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.,* 629 F.3d 450, 453 (5th Cir. 2010).

plausible). A claim under the Rehab Act additionally requires in the third prong that the plaintiff was discriminated against "solely by reason of her or his disability." *Hileman v. City of Dallas,* 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)).

Valenzuela makes only conclusory allegations that UTAustin committed violations under the ADA or the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Valenzuela's subjective belief that Defendants discriminated against her because of her disability, no matter how genuinely held, cannot establish discrimination. *See Matthews v. United Bhd. of Carpenters & Joinders of Am.,* 228 F. App'x 436, 440 (5th Cir. 2007). The Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). As discussed *infra,* Valenzuela has not pleaded sufficient facts to establish a plausible claim of discrimination based on disparate treatment or a failure-to-accommodate under the ADA or the Rehab Act. Moreover, UTAustin and Dr. Clarke in his official capacity have immunity from the ADA claim. *Block,* 952 F.3d at 617, n.11.

### 1.   Valenzuela has not pleaded sufficient facts that she had a disability.

Valenzuela has not pleaded sufficient facts that she suffered from a qualifying disability at the time of the alleged discriminatory actions to state a plausible claim for disability-discrimination or failure-to-accommodate. Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Section 504 of the Rehab Act adopts the ADA's definition of "individual with a disability." 29 U.S.C. §§ 705(9)(B), (20)(B), and 794(a).

Major life activities are "those activities that are of central importance to daily life." *Id.* "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102. Further, to be

"substantially limited" a person must be unable or significantly restricted in her ability to perform a major life activity that the average person in the general population can perform. *See EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). Significantly, the inability to perform a major life activity must occur *at the time of the discriminatory act*. *See Hale,* 642 F.3d at 500 (holding that plaintiff failed to allege facts to allow the Court to reasonably infer that she met the requirements at the time of the alleged ADA violations) (citation omitted).

The allegations in the Complaint fall short of meeting these requirements. Although Valenzuela presented documentation of a disability on October 15, 2015, and SSD granted her specific accommodations based on the documentation at that time, she has not pleaded any facts regarding this vague disability and the impact of her conditions on her ability to perform major life activities *at the time* of the alleged discriminatory actions. **Dkt. 22**, at ¶ 15. *See* **EX A**, at 3-4. For instance, while Valenzuela alleges that in Spring 2017, she had to quit her part time job and take incompletes in her classes, **Dkt. 22**, at ¶ 24, she does not plead that this was the result of an alleged disability that substantially limited any major life activity. At most, the pleaded facts show Valenzuela had an impairment at the time of the alleged ADA and Rehab Act violations. It is well established that "[m]erely having an impairment ... does not make one disabled for purposes of the ADA." *Chevron Phillips Chem. Co.,* 570 F.3d at 614. Moreover, while Valenzuela lists diagnosed conditions in May 2017, *see* **Dkt. 22,** at ¶ 27, this is not sufficient to qualify as a disability. The Fifth Circuit has held that "[i]ndividuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment but must present evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Arredondo v. Gulf Bend Ctr.*, 252 Fed. Appx. 627, 630 (5th Cir. 2007) (internal quotations omitted) (quotation omitted)).

Finally, Valenzuela has not pleaded any facts demonstrating that *at the time* of the alleged discriminatory acts she had a record of an impairment that substantially limited one or more major

life activities, or that UTAustin regarded her as having such an impairment. 42 U.S.C. § 12102(1). Absent allegations of substantial limitations in the performance of a major life activity, she has failed to state a claim for relief under the ADA or Rehab Act.

### 2.  Valenzuela was not qualified to receive financial aid.

Valenzuela's allegation that her eligibility was challenged because of her medical leave of absence or alleged disability is false. **Dkt. 22**, at ¶¶ 19-20, 56. She was not qualified to receive financial aid. Valenzuela filed appeals challenging UTAustin's findings of ineligibility for financial aid based on her failure to meet the pace set out in the Satisfactory Academic Progress ("SAP") for her graduate program. *Id.* at ¶ 56. **EX B** (financial aid appeals).[11] To remain eligible for federal, state and some institutional financial aid, students must comply with UT's standards for SAP that includes a requirement to successfully complete at least 75% of credit hours attempted by a student.[12] Financial aid funding is not guaranteed. Valenzuela's pace as of May 26, 2017 was 33.3%, and her pace as of January 4, 2019 was 57.1%. **EX. B**. Valenzuela was ineligible for financial aid based on her pace in the SAP. Despite her ineligibility, the Office of Financial Aid approved Valenzuela's financial aid eligibility after her appeals. *Id.* Notably, Valenzuela does not plead any facts that she was denied financial aid.

### 3.  UTAustin did not exclude or deny benefits to Valenzuela, nor discriminate against her by reason of her disability.

Valenzuela failed to plead sufficient facts on the second and third elements for a plausible claim of disability discrimination that she was ultimately excluded from participation in or denied the

---

[11] Valenzuela refers to her January 30, 2019 appeal of UTAustin's rejection of her request for financial aid in the 2018-2019 school year and her prior appeal. These appeals are central to her allegations of intentional discrimination and are considered part of the pleadings. UTAustin is entitled to attach a copy of the appeals. *See Causey*, 394 F.3d at 288.

[12] UTAustin requests the Court to take judicial notice of the guidelines for maintaining eligibility for financial aid available at   https://onestop.utexas.edu/managing-costs/scholarships-financial-aid/managing-aid/maintaining-eligibility/   (last accessed July 29, 2020). "Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment." *Residents v. Zone*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017) (Harmon, J.) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011), *aff'd* 734 F. App'x. 916 (5th Cir. 2018); *see Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (finding no objection to the panel taking judicial notice of Texas agency's website when denying rehearing en banc); *see also* FED. R. EVID. 201(d) ("The court may take judicial notice at any stage in the proceeding.").

benefits of the services, programs, or activities at UTAustin, or otherwise discriminated against, and that such was by reason of her alleged disability.

### a. UTAustin did not fail to make a reasonable accommodation.

Under the Rehab Act, a school is required to "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a). Such "[m]odifications may include changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted." *Id.* Likewise, "Title II requires public entities to make 'reasonable modifications in policies, practices, or procedures' for disabled individuals, unless the entity can show that a modification would 'fundamentally alter the nature' of the service or program it offers." *Block,* 952 F.3d at 618 (citing 28 C.F.R. § 35.130(b)(1)(7)(i); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454–55 & n. 11–12 (5th Cir. 2005)). "A public entity's failure to make a reasonable modification may satisfy the second and third prongs of the prima facie case." *Id.* (citing *Windham v. Harris Cty., Texas*, 875 F.3d 229, 235 (5th Cir. 2017)). To show that the denial of services was "by reason of" disability, Valenzuela must show that the denial was intentional. *Delano–Pyle*, 302 F.3d at 574. Additionally, "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504." *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, 641 F. App'x 423, 426 (5th Cir. 2016) (quoting *D.A.*, 629 F.3d at 455).

"To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). In a

reasonable accommodation case, the ADA and Rehab Act are virtually indistinguishable except for their causation standards. Valenzuela did not plead a plausible claim under either causation standard.

**(1)  Disability and consequential limitations were not known.**

In the context of a failure-to-accommodate claim, intentional discrimination requires at least actual knowledge that an accommodation is necessary. *See Cadena*, 946 F.3d at 724 ("[T]his court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt."). Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees *and* requested an accommodation in direct and specific terms. *Windham*, 875 F.3d at 237.

Valenzuela bears the burden of showing that she requested a modification and that it was reasonable. *See Hale*, 642 F.3d at 500*; see also Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) ("Reasonable accommodation is an element of a *prima facie* case of discrimination under the ADA, and [the plaintiff] bears the burden of proof of reasonableness.") (citation omitted). On October 15, 2015, SSD granted Valenzuela specific academic classroom and testing accommodations, services, and referrals. **EX. A**, at 3-4. SSD subsequently amended this on February 28, 2018. *Id.* at 1-2. Valenzuela alleges that UTAustin subsequently denied these accommodations. However, Valenzuela's failure-to-accommodate claims are time-barred as discussed *supra* in section A. **Dkt. 22**, at ¶¶ 30-34, 38-41, 43-44, 46-49.

To the extent these claims are not time-barred, Valenzuela has not sufficiently pleaded that at the time of the alleged denials that Dr. Davies, Dr. Smith, or Dr. Frizzi were aware of the accommodations granted by SSD in October 2015. She does not plead any facts that she requested and presented these accommodations for their review. *Id.* at ¶¶ 43-44, 46-49. Importantly, accommodations granted by SSD do not become effective until the student delivers an

accommodation letter received from SSD to the professor.[13] Thus, any accommodations granted by SSD never became effective.

Similarly, Valenzuela does not plead any facts regarding whether she presented Dr. Clarke with an accommodation letter from SSD, presented the letter within one-week after receiving it from SSD, and whether she reviewed the letter with Dr. Clarke and the use of accommodations in his Fall 2015 tutorial as required.[14] **Dkt. 22**, at ¶ 38. Failure to do so means the accommodations were not effective for the Fall 2015 tutorial. Additionally, the facts as pleaded are insufficient to establish a plausible claim. Classes began on August 26, 2015 and SSD granted specific classroom and testing accommodations to Valenzuela on October 15, 2015. **EX. A**, at 3-4.[15] Moreover, the facts as pleaded do not demonstrate that Dr. Clarke was aware of Valenzuela's disability and its resulting limitations at the time of the alleged denials as required to establish a failure-to-accommodate claim. *See Cadena*, 946 F.3d at 724; *see also Hale*, 642 F.3d at 500. SSD did not identify Valenzuela's disabilities, nor her limitations. **EX. A**.

Under the generally applicable rule, "[i]f the [plaintiff] fails to request an accommodation, the [public entity] cannot be held liable for failing to provide one." *Windham*, 875 F.3d at 239. Importantly, Valenzuela does not plead that she ever requested a waiver to have her undergraduate degree in French fulfill her foreign language requirement for the master's degree program. **Dkt. 22**, at ¶ 32. She does not plead that she requested accommodations from Dr. Clarke upon returning from her medical leave of absence in August 2016, nor does she plead that Dr. Clarke deliberately refused to provide or denied any requested accommodations. *Id.* at ¶ 41. And she does not plead that she requested any accommodations from UTAustin's Office of Financial Aid as it relates to her eligibility for financial

---

[13] UTAustin requests the Court to take judicial notice of the "Student Rights and Responsibilities" available at https://diversity.utexas.edu/disability/rights-and-responsibilities/ (last accessed July 30, 2020).
[14] *Id.*
[15] Defendants request the Court to take judicial notice of the "Long Session 2015-2016" calendar available through UTAustin's Office of the Registrar at https://registrar.utexas.edu/calendars/15-16 (last accessed July 24, 2020).

aid that were deliberately refused or denied. Notably, the accommodations granted by SSD only relate to "academic" accommodations; not financial aid eligibility. **EX. A**.

**(2) UTAustin did not deny Valenzuela reasonable accommodations.**

A plaintiff must sufficiently plead facts inferring that "a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014) (quoting *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (emphasis in original)).

*First,* Valenzuela does not plead that she actually *requested* a waiver of the foreign language requirement, presented a letter of accommodation, or even requested any accommodations from Dr. Davies, Dr. Smith, or Dr. Frizzi. **Dkt. 22**, at ¶¶ 32, 43-49. *Second,* SSD did not grant Valenzuela any accommodations relating to homework assignments, assignments in general, readings, presentations, restroom breaks, or automatic attendance flexibility. *Compare Id.* at ¶¶ 39, 44, 46-49, with **EX. A**. SSD only provided Valenzuela permission to discuss the possibility of flexibility with attendance. *Id.* Final determination of attendance is made by the instructor based on the structure of the course and by using the Attendance Clarification Form that is required to be completed, signed by both the student and instructor, and returned to SSD to be officially recognized. *Id.* Valenzuela does not plead any facts with regards to the Attendance Clarification Form. *Third,* Valenzuela does not plead sufficient facts regarding the circumstances surrounding the alleged denials of accommodations for extended time on exams, the right to record lectures, or the option of taking exams in a reduced distraction environment. **Dkt. 22**, at ¶¶ 39, 44. SSD only granted one and one half the allotted time for taking tests in class unless speed is the factor being tested. **EX A**. Valenzuela does not plead whether the denial of extension of time on exams was in excess of that granted by SSD, or whether speed was the factor being tested. Valenzuela also failed to plead any facts that she arranged for an accommodation with her professor for extra time on exams and/or scheduled to take her exams in the testing space

at SSD for a "reduced distraction environment" within 10-days prior to the exam as required.[16]

Finally, Valenzuela has not alleged any facts as to whether any of these denials were intentional, made in bad faith, or gross mismanagement. The statements that Valenzuela attributes to Dr. Clarke and Dr. Davies do not amount to intentional discrimination. **Dkt. 22**, at ¶¶ 38, 44(e)-(f). Defendants further deny these statements. Even viewed in the light most favorable to the plaintiff, these statements do not qualify as intentional discrimination as these concerns would apply to any student – disabled or not – requesting such an accommodation. *See Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016) (holding that a statement that a requested accommodation might give the requester an unfair advantage over other students does not qualify as intentional discrimination). Moreover, Valenzuela has not shown that UTAustin intentionally denied these benefits and was motivated to do so either by reason of or solely because of her claimed disability. Thus, she has not pleaded that any of the alleged denials were "by reason of" her alleged disability. *Delano-Pyle*, 302 F.3d at 574; *C.C.*, 641 F. App'x at 426. Although she claims her professors denied her requests for accommodations, she pleaded no facts she reported these issues to SSD as required.[17] Accordingly, Valenzuela failed to plead sufficient facts to establish a *prima facie* case of failure-to-accommodate.

### b.  Valenzuela was not otherwise subjected to disability discrimination.

Valenzuela also alleges that she was otherwise subjected to disability discrimination based on disparate treatment because of various discrete actions taken by UTAustin. However, Valenzuela has not pleaded sufficient facts to demonstrate plausible claims of discrimination.

### (1)  Valenzuela chose to take a leave of absence in Spring 2020.

Valenzuela pleaded that UTAustin denied her registration for final class work in January 2020, which forced her to take a leave of absence. **Dkt. 22**, at ¶ 57. On the other hand, Valenzuela pleaded

---

[16] *See* FN 13.
[17] *See* FN 13.

that her leave of absence in Spring 2020 was the result of Dr. Clarke's refusal to advise her on her thesis. *Id.* at ¶ 45. Valenzuela's inconsistent facts regarding the necessity to take the leave of absence prevent the Court from accepting them as true. *See Gersten v. Rundle*, 833 F. Supp. 906 (S.D. Fla. 1993) (holding the court does not accept as true facts alleged in a complaint that are internally inconsistent or run counter to facts of which court can take judicial notice), *aff'd*, 56 F.3d 1389 (11th Cir. 1995). Valenzuela took a leave of absence in Spring 2020 because her thesis adviser, Dr. Davies, was teaching as a visiting professor at the University of Lund in Sweden until June 2020. **EX. C**.[18] Valenzuela submitted the Authorization for Leave of Absence on January 30, 2020 – 9 days after classes started.[19] *Id.* Valenzuela's leave of absence in Spring 2020 is not a result of any acts or omissions taken by UTAustin, or any discriminatory animus, but solely the acts of Valenzuela herself. Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination for this allegation.

### (2) Valenzuela is required to schedule the colloquium.

Valenzuela also pleaded that the Art History Department refused to schedule the colloquium on her thesis since November 2018 because it is weary of her disabilities. **Dkt. 22**, at ¶¶ 53-54. On the contrary, Valenzuela had not (1) completed and submitted her written prospectus for her thesis; and (2) scheduled the colloquium as required by the Guide to Graduate Studies in Art History.[20] The guide dictates that,

> A week before the scheduled date of the Colloquium the student presents to the Graduate Adviser for Art History (and to the four other discussants described below) a written prospectus prepared with the help of the thesis adviser; the prospectus is submitted electronically and in hard copy to those attending the colloquium; the prospectus is e-mailed

[18] Since Valenzuela refers to her leave of absence in Spring 2020, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the Spring 2020 leave of absence and correspondence regarding Valenzuela's decision to take leave to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

[19] UTAustin requests the Court to take judicial notice of the calendar for the "Spring Semester 2020" available at https://registrar.utexas.edu/calendars/19-20 (last accessed July 26, 2020). Registration for the Spring 2020 semester was from October 28-November 8, 2019, registration reopened on January 13-17, 2020 for continuing and readmitted students, and classes began January 21, 2020

[20] Defendants request the Court to take judicial notice of the "Guide to Graduate Studies in Art History" available at sites.utexas.edu/artgrads/files/2020/03/ARH-Graduate-Handbook1.pdf (last accessed July 17, 2020).

to the Graduate Coordinator.[21]

The guide further dictates that the onus of scheduling the colloquium for the thesis is on the student:

> To schedule the colloquium, first go to the on-line course schedule and note the teaching schedules for all faculty who are involved in your colloquium and black out those days/times. At that point, you can e-mail your committee with several possible dates and times. The Graduate Adviser will suggest times that are more suitable and students will be notified if this is the case. Once you have found a suitable time and date, contact the Art History administrator using "MA Colloquium Schedule Request" in the Subject line to request that you be added to the colloquium calendar. If you make any changes to your original schedule, you must notify the Art History administrative office with the most current information.[22]

Valenzuela was fully aware of the onus to schedule her colloquium. On May 17, 2019, Valenzuela submitted a draft of the written prospectus to Dr. Davies, her thesis adviser. **EX D**.[23] On June 12, 2019, Valenzuela informed Dr. Davies that she planned to schedule her colloquium for late August 2019 and finish her thesis by December 2019. *Id.* Valenzuela did not follow-through on this. It was not until June 2, 2020 that Valenzuela contacted Dr. Davies again to discuss scheduling her colloquium. *Id.* On July 24, 2020, Valenzuela submitted a final revised draft of her written prospectus to Dr. Davies and informed her she would submit it to the thesis committee. *Id.* Valenzuela scheduled her colloquium and it was held via Zoom on July 31, 2020. *Id.* The delay in the scheduling of the colloquium was not a result of any acts or omissions taken by UTAustin, or any discriminatory animus, but solely the acts of Valenzuela herself. Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination.

### (3) Professor Papalexandrou did not discriminate against Valenzuela.

Valenzuela pleaded that on October 31, 2018, Professor Nassos Papalexandrou discriminated against her on the basis of her disabilities when he rejected her request for advising assistance. **Dkt.**

---

[21] *See id.* at 5.

[22] *See id.* at 5.

[23] Since Valenzuela refers to UTAustin's failure to schedule her colloquium, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the communications regarding the scheduling of the colloquium to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

**22**, at ¶¶ 35-36. Valenzuela's conclusory allegation is disingenuous. Professor Papalexandrou, the father of a special needs child, declined to participate in Valenzuela's colloquium because he did not want to commit time and energy to the project because she had avoided any contact with him during her studies and he did not know her as a student. **EX. E.**[24] Accordingly, Valenzuela cannot demonstrate a plausible claim of disability discrimination.

### (4) Valenzuela did not opt-in to the graduate student website.

Valenzuela further pleaded that UTAustin discriminated against her by not including her on the website showcasing each of the Art History graduate students. **Dkt. 22**, at ¶ 69. On the contrary, graduate students must opt-in to be included on the website. **EX F.**[25] Inclusion on the website is not automatic. *Id.* Valenzuela pleaded no facts suggesting that she requested her information to be included on the website and that UTAustin after receiving this request intentionally discriminated against her by leaving her off the website. Accordingly, Valenzuela has not pleaded a plausible claim of intentional discrimination as it relates to this allegation.

### (5) Dr. Clarke and UTAustin have gone above and beyond in assisting Valenzuela with obtaining her master's degree.

Valenzuela pleaded that Dr. Clarke remains discriminating against her through his position as Graduate Advisor for UTAustin's Art History program, and that despite her readmission to the graduate program, he and UTAustin continue to treat her as if she is not really a part of the Art History program. **Dkt. 22,** at ¶¶ 42, 70. Valenzuela pleaded no facts to support what actions, if any, that Dr. Clarke and/or UTAustin have continued taking against her that she alleges is discriminatory. These vague, conclusory allegations are not sufficient to support a plausible claim of disability discrimination.

---

[24] Since Valenzuela refers to the email received from Professor Papalexandrou, this is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of this email to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.
[25] Since Valenzuela refers to the website and UTAustin's failure to include her on it, is central to the allegations in her Complaint. UTAustin is entitled to attach a declaration from the individual in charge of maintaining this website to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

*** 

In sum, Valenzuela has not alleged conduct that would plausibly violate Title II of the ADA and the Rehab Act. Valenzuela did not plead sufficient facts that she appropriately requested and was denied reasonable accommodations by UTAustin, nor that her alleged disability was a motivating factor or sole factor in any of the alleged acts or omissions taken by Defendants. Other than the alleged (statutorily time-barred) denial of waiver to satisfy the foreign language component, Valenzuela has not pleaded the existence of any non-disabled or less disabled graduate student, or graduate student with the same disabilities who was treated more favorably. Nothing in the Complaint or any alleged statements implies any discriminatory animus by Defendants. Instead, UTAustin has gone out of its way to assist Valenzuela in reaching her goal to obtain her master's degree. Given that Valenzuela has pleaded no conduct in violation of Title II, under the first step in *Georgia*, there is no abrogation of sovereign immunity requiring dismissal for lack of jurisdiction. *Block*, 952 F.3d 613. Her claims under the Rehab Act should be dismissed for lack of jurisdiction for failure to state a claim.

### D.  Valenzuela Lacks Standing.

Additionally, Valenzuela has not established standing for several of her claims. "[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). To establish standing, "the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015). Valenzuela has wholly failed to meet her burden of establishing all three aspects of legal standing. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

#### 1.  Valenzuela suffered no injury in fact.

Valenzuela failed to articulate any injuries with regards to the alleged discriminatory allegations in paragraphs 29, 41, 59, and 60 of her Complaint. **Dkt. 22**. "At the pleading stage, allegations of injury

are liberally construed," but allegations of conjectural or hypothetical injury are not sufficient to establish standing. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350 (2006)). Importantly, Dr. Clarke's tenure as Graduate Adviser for Art History began on July 22, 2019, thus any allegations against him in this position prior to July 22, 2019 are not plausible. While Valenzuela pleaded she was forced to select only "independent studies" classes with Dr. Clarke, this is a hypothetical injury. As pleaded, Valenzuela did not register and take any non-independent studies classes with Dr. Clarke after August 2016. Similarly, Valenzuela did not plead that she suffered any injury when she requested readmission into the master's program. **Dkt. 22**, at ¶ 58. Valenzuela was informed on May 8, 2020 that the faculty had voted to readmit her to the program – within one month of her request. *Id.* at ¶ 70. **EX G.**[26] Not only did she fail to plead an injury; it is moot.

### 2.  Valenzuela has no Redressability.

Valenzuela cannot show that any of her alleged injuries can be redressed by a favorable decision. It must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Even if Valenzuela had pleaded sufficient facts to support a plausible claim of disability discrimination, she "may only recover compensatory damages upon a showing of *intentional* discrimination." *Smith v. Harris County, Tex.*, 956 F.3d 311, 318 (5th Cir. 2020) (emphasis added) (quoting *Delano–Pyle*, 302 F.3d at 574); *accord Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). None of the allegations indicate that there was any *intention* by UTAustin to discriminate against Valenzuela because of her alleged disability. Thus, Valenzuela is not entitled to recover any compensatory damages. Valenzuela is also not entitled to any equitable damages through *Ex parte Young* because she has not alleged any claims against Dr. Clarke under the ADA or the Rehab Act. **Dkt. 22,** at ¶¶ 81-90. Any relief against

---

[26] Since Valenzuela refers to her application for re-admission to the master's program, it is central to the allegations in her Complaint. UTAustin is entitled to attach a copy of the letter to Valenzuela granting her application for re-admission to this motion without the motion converting to a motion for summary judgment. *See Causey*, 394 F.3d at 288.

Dr. Clarke in his individual capacity is also barred because a plaintiff does not have Article III standing with respect to parties who are powerless to remedy the alleged injury. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc). Moreover, Dr. Clarke has qualified immunity from this claim.

### E. Valenzuela Failed to Sufficiently Serve Dr. Clarke in his Individual Capacity.

On July 20, 2020, Valenzuela requested the Court to issue summons to Dr. Clarke at UTAustin. **Dkt. 25**. To date, Dr. Clarke has not received this summons. Should the Court find that Valenzuela has sued Dr. Clarke in his individual capacity, service of process on Dr. Clarke via certified mail to UTAustin is insufficient under both federal and state law. Service must be made by delivering a copy of the summons personally to Dr. Clarke via a process server. *See* FED. R. CIV. P. 4(e)(1)-(2); *see also* TEX. R. CIV. P. 106(a)(1)-(2); TEX. R. CIV. P. 103; *Delta Steamships Lines, Inc. v. Albano,* 768 F.2d 728, 730 (5th Cir. 1985). Accordingly, based on insufficient service all claims against Dr. Clarke in his individual capacity must be dismissed without prejudice, pursuant to Rule 12(b)(5). It would be futile for the Court to allow proper service because Valenzuela cannot plead a plausible claim against Dr. Clarke requiring dismissal with prejudice, pursuant to Rule 12(b)(6) as discussed *infra*.

### F. Dr. Clarke has Qualified Immunity in his Individual Capacity.

Dr. Clarke raises the defense of qualified immunity for any claims in his individual capacity, which may be properly asserted in a Rule 12(b)(6) motion. At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original). Valenzuela asserted claims against Dr. Clarke for actions he took within the course and scope of his employment with UTAustin. Dr. Clarke at all times acted in good faith. Because Valenzuela asserts discrete claims against Dr. Clarke, she must overcome qualified immunity as to all of them. Because Valenzuela's claims lack facial plausibility they do not allow the Court to draw the reasonable inference that Dr. Clarke in his individual capacity is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550

U.S. at 570. Accordingly, Valenzuela has not abrogated Dr. Clarke's qualified immunity and the Court should dismiss Valenzuela's § 1983 claim against Dr. Clarke in his individual capacity with prejudice, pursuant to FED. R. CIV. P. 12(b)(6). *See, e.g., Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (qualified immunity under § 1983)).

### G. Punitive Damages Should be Dismissed as a Matter of Law.

Valenzuela cannot bring punitive damages against UTAustin and Dr. Clarke in his official capacity. **Dkt. 22**, at ¶ 98. *See Barnes v. Gorman,* 536 U.S. 181 (2002) (holding that punitive damages may not be awarded in private actions brought to enforce Title VI, section 202 of the ADA, or section 504 of the Rehabilitation Act); *see also Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 815 (E.D. Tex. 2013) (holding that punitive damages against a municipality and other governmental entities are not recoverable under § 1983) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981)). Additionally, due to qualified immunity from the § 1983 claim, Valenzuela cannot recover punitive damages against Dr. Clarke in his individual capacity.

## V. CONCLUSION

The Court should dismiss Plaintiff's claims against UTAustin and Dr. Clarke in his official capacity under Title II of the ADA and § 1983 without prejudice based on sovereign immunity, pursuant to FED. R. CIV. P. 12(b)(1); dismiss her discrimination claims against UTAustin and Dr. Clarke in his official capacity under the Rehab Act with prejudice for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6); and dismiss all claims with prejudice against Dr. Clarke in his individual capacity for failure to state a claim to abrogate his qualified immunity, pursuant to FED. R. CIV. P.12(b)(6). Defendants further request any and all such other relief including costs and attorney's fees.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

 _/s/  Summer R. Lee_
**SUMMER R. LEE**
Texas Bar No. 24046283
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512) 475-4031/FAX (512) 474-2697
summer.lee@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served through CM/ECF filing, on this the **18th day of August, 2020,** upon the following individual:

Terry P. Gorman, Esq.
tgorman@school-law.co
*Attorney for Plaintiffs*

 _/s/  Summer R. Lee_
**SUMMER R. LEE**
Assistant Attorney General