IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMANDA VALENZUELA, § | |
|     *fka* JANE UTAUS-VA DOE § | |
|     Plaintiff § | |
| vs. § | |
| § | C.A. No. 1:19-cv-01202-RP |
| THE UNIVERSITY OF TEXAS § | |
| AT AUSTIN and JOHN CLARK § | |
|     Defendants § | |

**PLAINTIFF'S RESPONSE TO SECOND MOTION TO DISMISS**

COMES NOW, Plaintiff AMANDA VALENZUELA ("Amanda") to file this "PLAINTIFF'S RESPONSE TO SECOND MOTION TO DISMISS" ("Motion") as follows:

**SUMMARY OF CONTENTS**

I.    PROCEDURAL STATUS
II.   ONGOING DISCRIMINATION
III.  STANDARD OF REVIEW
IV.  ARGUMENT IN RESPONSE
    A. Limitations
    B. Sufficiency of ADA and 504 Claims
    C. Defendant Clark
    D. Specific Rebuttals
V.   CONCLUSION

**I.    PROCEDURAL STATUS**

1.    Pending before this Court is the following motion filed by Defendants on August 18, 2020:

**PLAINTIFF'S RESPONSE TO SECOND MOTION TO DISMISS**    1
glaw 2020.09.22

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND-AMENDED COMPLAINT

(hereafter, "MTDismiss"). (*ECF #27*).

2. Defendants' MTDismiss is extensive and includes evidentiary statements not before the Court as well as numerous documents intended to rebut the allegations set forth in Plaintiff's Second-Amended Complaint ("Complaint") filed on July 13, 2020 (*ECF #22*). The bulk of Defendants' MTDismiss is that: *what Amanda pled is simply not true.* By stating so, Defendants are attempting to dismiss Plaintiff Amanda's Complaint as though discovery has been completed with this matter ripe for a motion for summary judgment, which is certainly not the case.

3. More disturbing than Defendants' effort to kill Plaintiff Amanda's Complaint with a premature evidentiary attack, is that such attack is being made at the precise time Defendant The University of Texas at Austin ("UTAustin") continues to discriminate against Amanda as she proceeds with her Herculean efforts to finish a degree that would have been completed years ago were it not for the acts and omissions of discrimination by Defendants' due to Amanda's Disabilities (as such disabilities are defined in Amanda's Complaint).

### II.   ONGOING DISCRIMINATION

4. Since the filing of Plaintiff Amanda's Complaint, one would hoped that Defendant UTAustin would have at least attempted to minimize, if not stop, the

ongoing discrimination against Amanda. Instead, Defendant UTAustin has "upped its game" in trying to prevent Amanda from finishing her degree.

5.  Although Plaintiff Amanda was finally able to present her Colloquium and Amanda has been given permission to complete her final Thesis, Defendant UTAustin then threw the following additional roadblocks in front of Amanda trying to prevent her graduation:

(a) Defendant UTAustin failed to give the required notification to the financial aid clearinghouse that Amanda was, indeed, a student, which resulted in Amanda being deemed as a former student subject to making payments under Amanda's student loans, with auto drafts then being made from Amanda's bank account without her knowledge;

(b) Because Defendant UTAustin has so delayed Plaintiff Amanda's graduation, Amanda no longer qualifies for Defendant's financial aid programs and is being forced to seek personal loans out in the marketplace at a higher rate of interest and far more limited borrowing amounts;

(c) As Plaintiff Amanda set forth to conduct the required research for Amanda's Thesis, Amanda discovered that Defendant UTAustin had blocked Amanda's access to the university libraries Amanda needed to access;

(d) After this Fall semester started and the deadline to add classes had expired, Plaintiff Amanda was informed that certain credits Amanda earned in 2017 will no longer be applicable to Amanda's degree, requiring additional classwork at additional expense; and

      (e)      After this Fall semester started and the deadline to add classes had expired, Plaintiff Amanda was further informed that one of the final classes she was ready to take this Fall would also no longer fit within Amanda's degree, requiring additional classwork at additional expense with the probability that Amanda's graduation may now be delayed until May 2021, or later.[1]

### III.   STANDARD OF REVIEW

6.     The applicable standard of review by this Court as to Defendants' MTDismiss provides that:

    (a)    The Court must accept the allegations as true and must review them in the light most favorable to plaintiff, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996);

    (b)    "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Amended-Complaint." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007);

    (c)    An Amended-Complaint must contain sufficient facts to state a claim for relief that is "plausible on its face," not merely facts which are conceivable. Id. at 570; and

    (d)    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] To properly present the foregoing matters before the Court, Plaintiff will be seeking leave to further amend Plaintiff's complaint.

**PLAINTIFF'S RESPONSE TO SECOND MOTION TO DISMISS**       4
glaw 2020.09.22

7.   Despite Defendants' protestations to the contrary, Plaintiff Amanda's Complaint clearly meets the foregoing standard, as elaborated hereafter. Again, the entire nature of Defendants' MTDismiss as being an evidentiary attack on Amanda's allegations establishes itself that Amanda's Complaint *contains sufficient facts to state a claim for relief that is plausible on its face*. If not, why all the purported controverting evidence?

### IV.   ARGUMENT IN RESPONSE

#### A. Limitations

8.   The initial thrust against Plaintiff Amanda's Complaint is that her claims under Section 504 of the Rehabilitation, Comprehensive Services, and under the Developmental Disabilities Act of 1978, 29 U.S.C. § 794 ("Section 504") and Title II of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12131–50 (2011) ("ADA") are time barred by applicable limitations requirements.

9.   Although Plaintiff does not challenge a two year window to file such claims, Plaintiff Amanda does assert that such limitations were equitably tolled which is never denied in Defendants' MTDismiss, yet certainly inferred.

10.   As described in one Fifth Circuit case cited by Defendants: "The doctrines of equitable tolling and equitable estoppel remain available to those plaintiffs who, through no fault of their own, might otherwise be barred from bringing

a claim by operation of a statute of limitations. We have found that equitable tolling may be appropriate when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. The doctrine of equitable estoppel may properly be invoked when the …. untimeliness in filing his charge results from either the employer's deliberate design to delay the filing or actions that the employer should unmistakably have understood would result in the employee's delay. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 368 (5th Cir. 2003) (citations omitted).

11.   Although perhaps inartfully pled as the state of *limbo* that Plaintiff Amanda found herself in, the context of the actions of Defendants is critical.

12.   Plaintiff Amanda is a student, in a prestigious graduate program at a highly acclaimed university, believing her professors and advisors. Amanda's near academic death was the result of not a single blow by Defendants, rather, Amanda has been, and continues to suffer, from the ancient Chinese torture and execution method of "*Death of A Thousand Cuts.*"

13.   As claimed in Defendants' MTDismiss, Defendants believe that they never did anything dramatic or Draconian to Plaintiff Amanda, even through today. But as pled, Defendants did continue to lead Plaintiff Amanda on, *keep after it, you*

*can get this done, we will be happy to schedule your Colloquium, well maybe you do not have to take Italian, or maybe you do, etc.*

14.     Plaintiff Amanda's near academic death fits precisely within the equitable tolling jurisprudence of the Fifth Circuit. Plaintiff Amanda continues to bleed as of this writing.

15.     When Defendants' individual acts of discrimination occurred in 2015 and other times, how was Plaintiff Amanda to know that such acts, such single cuts, were going to continue for years with consequences that Amanda never could have foreseen?

## B. Sufficiency of ADA and 504 Claims

16.     Defendants' MTDismiss then attacks Plaintiff Amanda's Complaint as not having pled sufficient facts to support her ADA and 504 claims. Yet Defendants' own assertions establish that Amanda has sufficiently pled such matters.

17.     Firstly, Defendants acknowledge that Plaintiff Amanda suffered from a Disability recognized by the United States, and, as a result, did in fact accept Amanda as a student with Disabilities and proscribed accommodations. However, then Defendants assert that no disability has been pled; that there are no allegations that Amanda's professors were aware of Amanda's Disabilities; and finally that Amanda did not plead the loss of an educational opportunities as a result of the discrimination.

18. Defendants would have this Court believe that the Art History program at Defendant UTAustin has five thousand students, where no professors really know their students. However, Defendants' attach numerous emails between Plaintiff Amanda and Amanda's professors and advisors at Defendant UTAustin.

19. Plaintiff Amanda has pled the Disability and the knowledge of her professors. Defendants never declare they did not know. Rather, Defendants' assert there should be more proof pled. Defendants simply wish this Court to hold Amanda to a standard of having already marshalled all her evidence to present it before the Court at this time.

20. Nor is there any doubt that Plaintiff Amanda has pled a negative educational act. Being delayed for years, being required to take courses not required, being ignored, all of such acts and omissions in addition to other pled matters have resulted in Amanda being hundreds of thousands of dollars in debt, with still no degree, and as set forth at the beginning of this Response, still being blocked by Defendant UTAustin and now being given additional class assignments which no one else has been required to pursue.

21. Defendants' argument of insufficient pleadings as to these claims is a disingenuous smokescreen.

### C. <u>Defendant Clark</u>

22. As to Defendant Clark, Defendants' MTDismiss would have the Court believe that Clark is perhaps a defendant in his individual capacity being sued for damages. Plaintiff Amanda's Complaint makes no such allegations.

23. Although Plaintiff appreciates Defendants' stipulation that everything Dr. Clark did, or did not do, to Plaintiff Amanda was simply within Dr. Clark's assigned duties at Defendant UTAustin, Defendant Clark is included in his official capacity, as the individual with the authority to stop the department discrimination as to Amanda.

24. Plaintiff Amanda seeks injunctive relief as to Defendant Clark in accord with 42 U.S.C. § 1983.

### D. <u>Specific Rebuttals</u>

25. As referenced, Defendants' MTDismiss is filled with unsupported factual assertions and documentation offered to rebut specific allegations within Plaintiff Amanda's Complaint.

26. While Plaintiff does not believe this is the time or the setting for an evidentiary response to each rebuttal offered by Defendants, Plaintiff Amanda would be remiss to not at least alert the Court to certain rebuttals that will be set forth in an upcoming motion for leave to amend, including:

(a)     In 2015, Plaintiff Amanda was being seen by a psychiatrist (Emily J Doyle, still employed with Defendant UTAustin) and counselor for Amanda's mental health. When Amanda applied in August 2015 for SSD Accommodations, Dr. Doyle and Amanda's counselor both attested to Amanda's Disabilities, and Amanda's application for SSD accommodations was approved. As a result, Amanda was provided accommodations and an SSD coordinator, Kelli Bradley.

(b)     On February 21, 2018, Amanda had Dr. Jeremy Wiseman (of Wiseman Family Practice) fill out additional documentation that was presented to Defendant UTAustin's SSD office, to include symptoms from Amanda's new Hashimotos diagnosis into her SSD accommodations. Based on the additional documentation and diagnosis, SSD accepted Amanda's new health situation and called for additional accommodations.

(c)     Plaintiff Amanda has a low class completion rate impacting her ability to gain financial aid because Amanda's medical withdrawal (for Disability reasons) is actually being counted as being *in school* and resulted in a registered failure to complete three courses. Further, the faculty situation that unnecessarily pushed back Amanda's Colloquium so many times the delay resulted in registered not completed thesis credits twice.

(d) Plaintiff Amanda was instructed semester after semester by her graduate advisors (Dr. Stephanie Mulder and Dr. David Stuart) to go ahead and reregister for courses even though Amanda was struggling with her faculty and the incompletes were counting against Amanda for financial aid.

(e) In the Spring of 2017, Amanda was asked to interview for selection for an upcoming course which was to take place in Fall 2017. The course was supposed to be on the Art of Cologne, Germany. Said course included a visit to Cologne, therefore, there was a high demand for spots in the course and interviews had to be conducted for selection. During Amanda's interview, Dr. Joan Holladay revealed Amanda's personal medical information to Dr. Jeffrey Smith.

(f) Further, Dr. Holladay divulged that in the course Dr. Holladay co-taught with Dr. Davies in 2015 on Roman art, Plaintiff Amanda became ill after traveling abroad in Rome and had to take medical leave. As a result, during the interview Amanda was repeatedly asked "Do you feel that you are healthy enough to travel abroad again?" In the end, Amanda was not selected for the course, but was not given any justification as to why.

(g) Because Plaintiff Amanda was denied the Cologne course, Amanda was advised by Dr. Mulder to register for a backup class on Mexico

City. However, after Amanda had registered, finalized her work schedule around the courses which Amanda had registered for, Amanda received an email from Dr. Mulder asking Amanda to drop the class and change around her schedule again because the department had come into some additional funding and the course now featured a trip to Mexico City.

(h) With the added travel component, Defendant UTAustin then decided, unilaterally and arbitrarily that Amanda could not take the course.

(i) Dr. Mulder then asked Plaintiff Amanda to drop the class, change around her work schedule, and advised Amanda to take a course that would not even count towards Amanda's degree requirements, just so other students would be able to go on the trip rather than Amanda.

(j) Amanda requested accommodation letters for every professor Amanda had. Amanda then provided such SSD letters to every professor

(k) Some professors, such as Adria Frizzi, Dr. Stuart and Dr. Walthall said that they had no problem with the accommodations and would do their best to meet Amanda's needs, which, for the most part, they followed through. As to these professors, the Professors said *they did not need to review or sign the forms because they had no problem with the accommodations.*

(l) Other professors, like Dr. Smith, Dr. Davies, and Dr. Clarke, were presented with the forms as to accommodations, but refused to sign them because they did not agree to the accommodations.

(m) In both of the foregoing scenarios, Plaintiff Amanda supplied the forms to every professor, and not a single professor agreed to sign the forms and return them to SSD as they are supposed to do, resulting in the lack of a paper trail outside of various emails in Amanda's possession as to Dr. Mulder (Graduate Adviser at the time), Dr. Clarke, Dr. Davies, Dr. Mulder, Dr. Stuart, and Dr. Walthall.

(n) Plaintiff Amanda requested a waiver every semester for Amanda's language requirement to be satisfied by Amanda's existing degree in French. Amanda discussed this matter multiple times with Dr. Stuart, who was Amanda's graduate adviser. In an email to Amanda, Dr. Stuart notes it is odd that they will not accept French. Amanda also discussed the matter with Stacie Brodie (Graduate Coordinator no longer with the department) and with Dr. Clarke and Dr. Davies multiple times.

(o) Instead of accepting the French, Dr. Davies specifically recommended that Amanda attend an intensive summer language program either abroad or with Middlebury to satisfy the Italian requirement. Amanda

applied to Middlebury and was accepted (this is a prestigious language program), but Amanda had to opt out because at that point her health was too poor, Amanda needed bloodwork done too often, and Amanda's food allergies were too severe.

(p)   Having explained the foregoing to Dr. Davies, Dr. Davies recommended Amanda take Italian through Defendant UTAustin instead, choosing to ignore the fact that Amanda's French degree should fulfill that requirement.

(q)   At no time did Plaintiff Amanda *choose* to take a leave of absence. Amanda was able to register, once without an adviser, which was necessary to be present for her Colloquium and oversee Amanda's thesis.

(r)   Staying registered for Amanda's thesis and Colloquium without having any faculty from Defendant UTAustin willing to assist, would have led to another incomplete, more student loans, and another decrease as to Amanda's satisfactory Academic Progress Rate of Completion. Since, Dr. Clarke refused to even reply to any of Amanda's emails, Amanda was faced with little choice but to take a leave of absence to avoid getting another incomplete and more loans without any progress.

(s)   Reading Defendants' MTDismiss, one could believe that Plaintiff Amanda did not write Amanda's thesis prospectus until 2019, and that Amended never scheduled a Colloquium until 2019.  Such a belief would be radically incorrect.

(t)   Plaintiff Amanda had previously scheduled two separate times for her Colloquiums. The first being on November 26, 2018 and the second for December 3, 2018. Both were cancelled by Amanda's faculty members.

(u)   As required by the student handbook, Amanda had written a draft of Amanda's prospectus which then later Dr. Davies did read during her office hours. Without the foregoing occurring first, Amanda never would have been allowed to schedule her Colloquiums as referenced.

(v)   As time passed without any faculty advise or assistance,  Amanda revised and refined her prospectus on her own. Thereafter, the new drafts were sent to Dr. Davies via email.

(w)   Defendants' MTDismiss further reads that Dr. Papalexadrou did not discriminate against Amanda, but chose to not participate in Amanda's Colloquium because Amanda had never taken a class with Dr. Papalexadrou, and Amanda "avoided him."

(x)   Within Amanda's graduate program, it is quite common for students to ask professors whom they have never taken a class with, or even whom they have never met, to participate in their Colloquium.

(y)   One example would be Sally Topping (a graduate 2017) who had two committee members whom she had never met previously, Karl Galinsky from the Classics Department of Defendant UTAustin and Charles Brian Rose from the University of Pennsylvania Department of Classical Studies.

(z)   Further, in the materials attached to Defendants' MTDismiss, only part of Amanda's email conversation with Dr. Papalexandrou was included. What was purposely omitted was the part including Amanda's unique situation and her explanation of why Amanda never took a class from him.

(aa)   During Plaintiff Amanda's first semester in the program, Dr. Papalexadrou was on sabbatical in Greece. When he returned to Austin, Amanda had been forced to take medical leave. The following semester when Amanda returned, Amanda was required to take courses from Dr. Clarke and Dr. Davies which did not allow Amanda to take a course from Dr. Papalexandrou.

  (bb) By the fourth semester, all of Plaintiff Amanda's *ancient class* requirements (Dr. Papalexandrou teaches ancient Greek art) were fulfilled, and Amanda could no longer take a course from him.

  (cc) Thus, Plaintiff Amanda was never avoiding Dr. Papalexadrou. Amanda did attend department events which he attended, and Amanda also attended several meetings at the Center for the Study of Ancient Italy (CSAI) which Dr. Papalexadrou hosted.

  (dd) As to the program website matter, when Amanda took medical leave in 2015, Amanda's profile was taken off the website and Amanda's photo was removed from the Graduate Student board in the department offices.

  (ee) When Amanda returned from medical leave, Amanda asked both Stacie Brodie (Graduate Coordinator, no longer with the department) and Leah Hansard, a Ph.D. student who was then in charge of the profiles of graduate students, if Amanda could have her photo and bio returned. Although both agreed, it never happened.

## V. CONCLUSION

27. A fair reading of Defendants' MTDismiss is that the Defendants wish Plaintiff Amanda's Complaint would simply go away. Not that different from Amanda wishing that her Disabilities had been acknowledged and respected. If that

had occurred, Amanda would have graduated years ago and would likely be employed within the Art History field Amanda adores.

28. For the reasons set forth, Defendants' MTDismiss should be denied, thereby allowing this matter to proceed with Amanda receiving any and all other relief she may show herself to be entitled.

Respectfully submitted,

Gorman Law Firm, pllc

By: /s/ Terry P. Gorman

Terry P Gorman, Esq.
Texas Bar No. 08218200
tgorman@school-law.co
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (214)-802-3477 (direct)
Telecopier: (512) 597-1455
**ATTORNEYS FOR PLAINTIFF
AMANDA VALENZUELA**

## CERTIFICATE OF SERVICE

      This is to certify that on the 22nd day of September 2020, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure utilizing the *VIA CM/ECF* filing system being:

SUMMER R. LEE
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Capitol Station Austin
Texas 78711-2548
summer.lee@oag.texas.gov
**ATTORNEYS FOR DEFENDANT**
**THE UNIVERSITY OF TEXAS AT AUSTIN and JOHN CLARK**

By: _____
      Terry P Gorman, Esq.