IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-1202-RP |
| UNIVERSITY OF TEXAS AT AUSTIN and JOHN CLARKE, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendants The University of Texas at Austin ("UT") and John Clarke's ("Clarke"), (collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. 27), along with the parties' responsive briefing, (Dkts. 29, 30). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

**I. BACKGROUND**

Plaintiff Amanda Valenzuela ("Valenzuela") is a graduate student at UT working on a master's degree in Art History. (Sec. Am. Compl., Dkt. 22, at 4). Valenzuela initially filed this action on December 11, 2019, alleging UT has discriminated against her because of her disabilities. (Compl., Dkt 1, at 1). In response to a motion for a more definite statement, Valenzuela filed her first amended complaint on April 28, 2020, and included additional allegations. (First Am. Compl., Dkt. 12). Valenzuela filed her second amended complaint, (Dkt. 22), on July 13, 2020, again adding allegations. Defendants then filed the present motion to dismiss. (Dkt. 27).

In her second amended complaint, Valenzuela asserts multiple instances of discrimination by UT because of her disabilities, including the following allegations: Valenzuela enrolled in UT's Art History program in 2015 and registered for accommodations due to her disabilities. (Sec. Am. Compl., Dkt. 22, at 4). In 2015, Valenzuela took a class with Clarke, who refused to grant Valenzuela

1

her accommodations, which included extended time on exams and homework assignments, the ability to record lectures, flexible attendance, and reduced distraction exam environments. (*Id.* at 11). Valenzuela was not able to finish Clarke's course. (*Id.*).

As a result of her disabilities and poor health, Valenzuela took a medical leave of absence from her studies in late 2015, and upon returning to UT in August 2016, Valenzuela began having issues qualifying for financial aid. (*Id.* at 5). At the time of her return from her absence, Valenzuela was also told she would only be permitted to enroll in "independent studies" classes with Clarke because of her need for accommodations. (*Id.* at 12). Around this same time, the UT health center recommended a medication regimen for Valenzuela that included toxic levels of iodine. (*Id.*). Valenzuela struggled with working with UT's financial aid department and managing frequent doctor appointments into the spring of 2017, at which time she was diagnosed with Hashimoto's Thyroiditis. (*Id.* at 6). Valenzuela also struggled with accessing accommodations in her classes. During the fall of 2015, fall of 2016, and fall of 2017, Valenzuela took seminars with UT professor Penelope Davies ("Davies") who refused to grant Valenzuela her accommodations. (*Id.* at 12–13). Similarly, in the fall of 2015 and fall of 2016, Valenzuela took classes with UT professor Cherise Smith ("Smith"), who likewise denied Valenzuela her accommodations. (*Id.* at 13–14).

In April 2018, UT's Art Department determined Valenzuela would be required to take coursework in Italian, a requirement that was not imposed on students without disabilities. (*Id.* at 9). Valenzuela began taking Italian in spring of 2018 with UT professor Adria Frizzi ("Frizzi"). (*Id.* at 14). While Frizzi "was better than the other professors" at granting Valenzuela her accommodations, Frizzi did deny Valenzuela some of her accommodations. (*Id.* at 14). In October 2018, Valenzuela requested that UT professor Nassos Papalexandrou ("Papalexandrou") advise her studies, a request he rejected that same day stating that Valenzuela "rubbed him the wrong way." (*Id.* at 10). Valenzuela took this comment to mean he did not want to work with her because of her disabilities.

(*Id.*). In November 2018, Valenzuela needed to begin scheduling her Colloquium, a process required to present her thesis topic to the Art Department. (*Id.* at 15). Her Colloquium was not scheduled until "after the filing of this lawsuit." (*Id.* at 15). In Spring 2020, Valenzuela had to take another leave of absence because Clarke declined to advise her thesis, delaying her graduation. (*Id.* at 13). In April 2020, Valenzuela requested to return to her coursework and was advised that her request to return would be reviewed. (*Id.* at 16). Finally, Valenzuela is not featured on UT's Art History website, as other graduate students are, which she attributes to UT's discrimination against her. (*Id.* at 18).

Valenzuela asserts that UT's alleged discrimination against her has harmed her in multiple ways. First, she states that as a result of the discrimination, her disabilities "have since multiplied to include:" "(a) Thyroid nodule growth, triggering Hashimoto's; (b) Chronic Fatigue Syndrome; (c) 6+ migraines per month; (d) Digestive sensitivity (IBS); (e) 40+ food/ingredient sensitivities; (f) Current infertility due to thyroid disease (may be long term); (g) Crippling anxiety, stress, and panic attacks; (h) Chronic pain and inflammation; (i) Disturbed sleep; and (j) Impaired cognition." (*Id.* at 7–8). She alleges her treatment has harmed her educational and professional standing, jeopardized her career, and endangered her investment. (*Id.* at 16–19). Overall, Valenzuela avers that her experience at UT has caused her a variety of physical and emotional harms and threatens to cause her others. (*Id.* at 18–21).

Based on the foregoing facts, Valenzuela seeks relief pursuant to (1) § 504 of the Rehabilitation Act ("Rehab Act"), (29 U.S.C. § 701 et seq.); (2) Title II of the Americans with Disabilities Act, (42 U.S.C. § 12101); and (3) § 1983 of Title 42 (for depriving Valenzuela her rights under the ADA, Rehab Act, and the Equal Protection Clause of the Fourteenth Amendment), (42

U.S.C. § 1983).[1] (Sec. Am. Compl., Dkt. 22, at 2–3, 23–27). Valenzuela asserts her claims under the ADA, Rehab Act, and § 1983 against UT, while she only asserts § 1983 against Clarke. The other individuals named in her complaint (Davies, Smith, Frizzi, and Papalexandrou) are not defendants. UT and Clarke make several arguments in support of their motion to dismiss Valenzuela's second amended complaint, including that many of Valenzuela's claims are time-barred, that UT and Clarke are being sued in their official capacity and are therefore immune from suit under the Eleventh Amendment, and that Valenzuela has failed to state claims upon which relief can be granted, among other arguments.[2] (*See generally* Dkt. 27).

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any

---

[1] In her introduction to her complaint, Valenzuela also alleges that UT and Clarke deprived her of her First Amendment rights under color of state law, thus violating § 1983. (Sec. Am. Compl., Dkt. 22, at 3). However, she does not include this First Amendment claim in the "causes of action" section of her complaint and the Court thus considers it waived.

[2] One argument UT and Clarke cite in support of their motion to dismiss is Valenzuela's failure to properly effectuate service of process on Clarke, requiring dismissal pursuant to Rule 12(b)(5). (Dkt. 27, at 24). Because the Court finds Valenzuela's suit must be dismissed on other grounds, it does not reach this issue.

one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

## III.  DISCUSSION

### A.  Statute of limitations

First, UT and Clarke assert that the majority of the instances of discrimination alleged by Valenzuela are time-barred by the statute of limitations. (Dkt. 27, at 3–7). "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). Under the ADA, Rehab Act, and § 1983, a two-year statute of limitations period is recognized. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (recognizing two-year statute of limitations for Rehab Act and Title II ADA claims); *Piotrowski v. City of Houston,* 51 F.3d 512, 515 n.5 (5th Cir. 1995) (Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims).

As Defendants point out, Valenzuela has not clearly pleaded when many of the instances of alleged discrimination against her were committed; nevertheless, the Court attempts to piece together when each of her claims accrued. (*See* Dkt. 27, at 4). First, the Court finds that Valenzuela's claim that UT challenged Valenzuela's financial aid and reviewed her disabilities when she returned from her medical leave of absence is time-barred, as she alleges she returned to her studies in August 2016 and did not assert this claim until December 11, 2019. (Sec. Am. Compl., Dkt. 22, at 5–6). Second, Valenzuela asserts Clarke denied her accommodations in fall 2015 and that upon her return from her leave of absence, she was forced to select independent studies courses with Clarke, amounting to discrimination against her based on her need for accommodations. (*Id.* at 12). The

6

statute of limitations has passed for this claim, as Valenzuela asserts she returned from her leave of absence in late 2016 and did not assert these claims until July 13, 2020.

Similarly, Valenzuela alleges that Smith and Davies refused to grant her accommodations in her courses between 2015 and 2017. (*Id.* at 12–14). Valenzuela did not assert these claims until July 13, 2020, and thus, these claims are time-barred. Valenzuela further alleges that in the spring of 2018, Valenzuela had to fight with the Art History department over her required coursework, was told that she would need to take coursework in Italian, and that Frizzi, her Italian professor, declined to grant some of her accommodations. (*Id.* at 9–10, 14). At the latest, these claims accrued some time in April 2018. (*Id.* at 9). Valenzuela did not assert these claims until she filed her first amended complaint on April 28, 2020. (Dkt. 12). If no equitable basis exists to toll limitations, a plaintiff's failure to provide specific dates of discriminatory actions acts as a time bar to these complained-of events. *See Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288 n.3 (5th Cir. 2008). The Court therefore finds that these claims, which accrued on some unknown date in April 2018, are barred by the statute of limitations.

To overcome the statute of limitations on the above-mentioned claims, Valenzuela must demonstrate that her claims are subject to an equitable doctrine that may have tolled or delayed the start of the statute of limitations. When a federal cause of action borrows a state statute of limitations, coordinate tolling rules apply. *See King-White*, 803 F.3d at 764; *Rotella v. Pederson,* 144 F.3d 892, 897 (5th Cir. 1998). The discovery rule defers accrual of the cause of action "until the injury was or could have reasonably been discovered." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011). The discovery rule only applies if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998)). "[T]he discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'"

7

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)).

Similarly, the doctrine of fraudulent concealment tolls the statute of limitations so that a defendant may not avoid liability "by deceitfully concealing wrongdoing until limitations has run." *Shell Oil*, 356 S.W.3d at 927. The doctrine requires a plaintiff to show that the defendant "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Id.* "When a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999).

The Court finds that Valenzuela has not alleged a basis for equitable tolling of her time-barred claims. In her complaint, Valenzuela asserts that these alleged instances of discrimination have placed her in a perpetual limbo, (Sec. Am. Compl., Dkt. 22, at 12). In her response to the motion to dismiss, Valenzuela further states that this perpetual limbo is similar to "death by a thousand cuts" and that her "near academic death" fits precisely within the Fifth Circuit's equitable tolling jurisprudence. (Dkt. 29, at 6–7). However, Valenzuela fails to cite any support for her assertions, nor does her argument for equitable tolling fit within the discovery or fraudulent concealment exceptions to the statute of limitations. (*Id.*). For these reasons, the Court will grant Defendants' motion to dismiss as to the above-mentioned, time-barred claims.

### C. Sovereign immunity

Defendants further aver that Valenzuela's remaining ADA and § 1983 are barred by sovereign immunity. Sovereign immunity based on the Eleventh Amendment "is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Federal courts "may not entertain a private person's suit against a State," unless the State

has waived its sovereign immunity or Congress has abrogated it by legislation. *Id.* at 253–54. Further, "sovereign immunity deprives the court of jurisdiction," so "claims barred by sovereign immunity can be dismissed" under Rule 12(b)(1). *City of Schertz v. United States Dep't of Agric. by & through Perdue*, No. 18-CV-1112-RP, 2019 WL 5579541, at *2 (W.D. Tex. Oct. 29, 2019) (citing *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)). It is well-established that sovereign immunity applies not only to actions where a state itself is the named defendant, but also to actions against state agencies and state instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017). Similarly, where a lawsuit is brought against an employee in his or her official capacity, the suit may be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

1. Section 1983

Defendants argue that Valenzuela's § 1983 claims that have not been dismissed subject to the statute of limitations must still be dismissed based on sovereign immunity. Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Congress has not abrogated sovereign immunity for § 1983 suits; nor has the State waived its immunity. *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Valenzuela acknowledges that UT "is a public university operating in the State of Texas" and that UT is "owned and operated by the State of Texas." (Sec. Am. Compl., Dkt. 22, at 3, 23). Further, Valenzuela concedes that she is suing Clarke only in his official capacity. (Dkt. 29, at 9). Valenzuela makes no claim that that Texas has waived, or that Congress has abrogated, sovereign immunity as to her § 1983 claims, and for good reason—Texas has neither waived, nor has Congress abrogated, sovereign immunity for § 1983 suits. *Lewis*, 665 F.3d at 630. As such, Valenzuela's § 1983 claims

against UT and Clarke must be dismissed. Further, as Valenzuela's only claims against Clarke were § 1983 claims, Clarke as a defendant must be dismissed from this lawsuit.

## 2.  ADA

At this stage, Valenzuela's sole remaining claims are her claims against UT under the ADA and the Rehabilitation Act that the Court has not identified as being time-barred. However, as Defendants point out, sovereign immunity also poses a challenge to Valenzuela's claims under Title II the ADA. (Dkt. 27, at 8–9).

In *United States v. Georgia*, the Supreme Court established a three-part test for determining whether Title II validly abrogates states' sovereign immunity. 546 U.S. 151 (2006). A court must determine, on a "claim-by-claim basis": (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Id.* at 159. The Fifth Circuit has held that in order to check for abrogation under the *Georgia* three-part test, courts must first determine whether a plaintiff has stated a valid claim under Title II. *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617–18 (5th Cir. 2020).

To establish a prima facie case of discrimination under Title II of the ADA, Valenzuela must show: (1) she is a "qualified individual" under the ADA; (2) she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UT is responsible; and (3) the exclusion was by reason of disability. *Id.* at 618. As to the first element, under the ADA, a "qualified individual" is a person with a "physical or mental impairment that substantially limits one or more major life activities," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). "Major life activities" are "those activities that are of central importance to daily life." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003). "[T]o be

substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011). Further, a plaintiff must allege that she was a "qualified individual with a disability" *at the time of the discriminatory act*. *Id.* at 501 (citing *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 884 (6th Cir. 1996)) (emphasis in original). In sum, if Valenzuela has failed to properly allege that she is a "qualified individual" under the ADA, the Court must find that her Title II claim does not abrogate UT's sovereign immunity.

The Court holds that Valenzuela has failed to meet her pleading burden on this element of her claim. The majority of Valenzuela's complaint makes only conclusory statements that UT discriminated against her based on her alleged disabilities. (*See, e.g.*, Sec. Am. Compl., at 6 (stating that the financial aid department had "discriminatory attitudes); at 8 (alleging Valenzuela became a "target of discrimination" because she was viewed as "damaged goods"); at 15 (stating that the department is "weary of Amanda and her Disabilities")). Apart from alleging that Valenzuela registered with UT to receive accommodations, Valenzuela fails to explain what disabilities she had at the time of the alleged instances of discrimination. (Sec. Am. Compl., Dkt. 5). Conclusory statements that she was discriminated against and vague allegations of having a disability do not show Valenzuela had a "physical or mental impairment that substantially" limited her ability to engage in activities "of central importance to daily life." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003).

The only place in Valenzuela's complaint where the Court can identify allegations of a specific physical or mental impairment having an impact on Valenzuela's life is on Page 7, where she alleges that her diagnosis of Hashimoto's Thyroiditis impacted her ability to engage in school and work in the spring of 2017. (Sec. Am. Compl., Dkt. 22, at 7). However, as the Court previously found Valenzuela's allegations from this period to be time-barred, these allegations are of no help.

11

Valenzuela does offer specific examples of how her treatment by UT *exacerbated* her disabilities, (*Id.* at 7–8), but this fails to meet the pleading requirement that Valenzuela allege the specific disabilities she was experiencing at the time of the discriminatory acts. *Hale*, 642 F.3d at 501. Given Valenzuela's failure to sufficiently plead the first element of a *prima facie* claim under Title II of the ADA, the Court must find that her Title II claim does not abrogate UT's sovereign immunity and dismiss her claims under Title II of the ADA.

### D.  Rehabilitation Act

Finally, the Court addresses whether Valenzuela has sufficiently plead her claim for violations of § 504 of the Rehab Act. The first element of a *prima facie* case under § 504 of the Rehab Act is the same as under Title II of the ADA: Valenzuela must show that that she is a qualified individual with a disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020). Section 504 of the Rehab Act adopts the ADA's definition of individual with a disability. 29 U.S.C. §§ 705(9)(B), 20(B), 794(a). As the Court has already found Valenzuela failed to meet her pleading burden on this element of her ADA claim, it must also hold that she has failed to do so regarding her Rehab Act claim. Therefore, the Court finds that Valenzuela's causes of action under § 504 must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### E.  Leave to Amend

In her response to Defendants' motion to dismiss, Valenzuela asserted that she would be seeking leave to further amend her complaint. (Dkt. 29, at 4 n.1). She has not done so. However, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation and internal quotation marks omitted). Following the briefing on the motion to

dismiss, Valenzuela requested that the Court stay her case to give her time to hire a new attorney as her previous counsel had tendered his license to practice law to the State of Texas for permanent revocation. (Dkt. 31). Considering this, the Court will allow Valenzuela to amend her claims subject to certain limitations.

First, as to the claims the Court identified as being barred by the statute of limitations, those claims are dismissed, and Valenzuela will not be permitted to amend them. Further, as the Court has found UT and Clarke to be immune from suit under § 1983, Valenzuela may not amend her § 1983 claims. However, insofar as Valenzuela asserts claims against UT pursuant to the ADA or Rehab Act that are not time-barred, the Court will permit her to amend those claims. The Court notes that it dismissed both Valenzuela's ADA and Rehab Act claims because she did not properly allege she was a qualified individual under either the ADA or the Rehab Act.[3] In their motion to dismiss, Defendants assert that additional infirmities plague Valenzuela's ADA and Rehab Act claims—the Court offers no opinion on the merits of those arguments. Should Valenzuela choose to amend her ADA and Rehab Act claims against UT, she must do so within thirty days from the date of this order.

---

[3] As to the ADA claim, the Court specifically found that Valenzuela's failure to allege she was a qualified individual meant that her ADA claims were barred by sovereign immunity.

## VI. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss Valenzuela's Second Amended Complaint, (Dkt. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that should Valenzuela choose to amend her claims subject to the limitations outlined by the Court, she must do so **on or before April 28, 2022.**

**SIGNED** on March 30, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE