IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 1:19-cv-01202-RP |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, | § | |
| | | |
| *Defendant*. | | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

## **<u>TABLE OF CONTENTS</u>**

ARGUMENT ....................................................................................................5

  I.  STANDARD OF REVIEW ...................................................................5

    A.  Rule 12(b)(1) .................................................................................5

    B.  Rule 12(b)(6) .................................................................................6

  II.  Plaintiff Adequately Pled ADA Title II and Retaliation Claims.....................6

  III.  Adequately Pled ADA Title II Claim.............................................................7

  IV.  Adequately Pled Retaliation Claim ...............................................................8

    C.  Claims not barred by sovereign immunity .................................9

    D.  Protected activity .........................................................................9

    E.  Materially adverse action ...........................................................10

    F.  Causal connection........................................................................11

    G.  Knowledge...................................................................................12

  V.  The Latest Pleading Does Adequately Plead a Claim under the ADA and/or Rehab Act.......................................................................................................12

    H.  Adequately Pled Claim of Discrimination .................................12

    I.  Adequately Pled Failure to Accommodate Claim.......................17

    J.  Plaintiff's ADA Claims are Not Barred by Sovereign Immunity..............18

CONCLUSION ................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.,* 428 F. Supp. 2d 640, 665 (S.D. Tex. 2006) ..........................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................5

*Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.,* 405 F.3d 954, 958 (11th Cir. 2005) ..................................................................................................................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ....................................5

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) ..................................................................................10

*Cadena v. El Paso Cnty.,* 946 F.3d 717, 724 (5th Cir. 2020) ..................................17

*City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997) ..........................................20

*Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) ................................................................................................................11

*Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) ................................9

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) ........................................................................................4

*Hooks v. Landmark Indus., Inc.,* 797 F.3d 309, 312 (5th Cir. 2015) ........................4

*Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ........................................25

*Lyle v. Univ. of Tex. Health Sci. Ctr., San Antonio* 2010 WL 1171791, at *2 (W.D. Tex. Mar. 24, 2010) ........................................................................................24

*McGregor v. Louisiana State Univ. Bd. of Sup'rs* , 3 F.3d 850, 867 (5th Cir. 1993) ............................................................................................................................24

*Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999) ...............................................8

*Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1033 (W.D. Tex. 2013) ................................................................................................................24

*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) .............................23

*Plyler v. Doe*, 457 U.S. 202, 221–22, 102 S. Ct. 2382, 2396–97, 72 L. Ed. 2d 786 (1982) ................................................................................................................19

*Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1438 (N.D. Tex. 1997) ............24

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ................................4

*Tennessee v. Lane*, 541 U.S. 509, 510, 124 S. Ct. 1978, 1980, 158 L. Ed. 2d 820 (2004) .................................................................................................. 19, 20, 21

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) ....25

*United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882, 163 L. Ed. 2d 650 (2006) ........................................................................................................8, 19

*Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 149 (2d Cir. 2002) ........8

**Statutes**

42 U.S.C. § 12102(1) ...............................................................................................12
42 U.S.C. § 12102(2)(A).........................................................................................12
42 U.S.C. § 12102(2)(B) ................................................................................... 12, 13

**Rules**

29 C.F.R. § 1630.2(*o*)(1)(ii)....................................................................................17
Fed. R. Civ. P. 12(b)(1).............................................................................................4
Fed. R. Civ. P. 12(e).................................................................................................7
Rule 12(b)(6)...........................................................................................................5

**NOW COMES** Plaintiff, Amanda Valenzuela ("Plaintiff"), by and through her attorneys, The Law Office of Keith Altman for her Response to Defendant's Motion to Dismiss, and hereby states the following:

**ARGUMENT**

I.   **STANDARD OF REVIEW**

    A. **Rule 12(b)(1)**

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted). Under Fed. R. Civ. P. 12(b)(1), "[a] motion . . . should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). Only when the court lacks the statutory or constitutional power to adjudicate a case, can it be properly dismissed. *Hooks v. Landmark Indus., Inc.,* 797 F.3d 309, 312 (5th Cir. 2015). Plaintiff bears the burden of proof that jurisdiciton exists. *Ramming*, 281 F.3d 158, 161.

Here, Plaintiff is able to meet that burden. For that reason, Defendants motion to dismiss must fail.

### B. Rule 12(b)(6)

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants fail to show that Plaintiff's claims, taken on their facts, will not provide for relief following discovery on the claims. For that reason, Defendants motion to dismiss must fail.

## II.   Plaintiff Adequately Pled ADA Title II and Retaliation Claims

Plaintiff had the Court's approval to amend her Complaint in regard to the ADA Title II and Retaliation Claims. The Court's Order does not limit the leave to amend to a specific section of each the ADA and Rehab Act, but instead mentions the ADA and Rehab Act claims only generally, therefore allowing Plaintiff leave to amend her claims within the total scope of the Acts. [*See* Dkt. 47, p.13].

Plaintiff's previous counsel was forced to withdraw from this case after filing of the Second Amended Complaint for issues with his law license. [Dkt. 33]. Only

more than one year after filing of the Second Amended Complaint was Plaintiff able to again obtain adequate representation through undersigned counsel. [Dkt. 40]. These issues caused Plaintiff's delay in raising the claims in the current form. Additionally, Defendant UTAustin is not prejudiced by the addition of ADA Title II and Retaliation claims. The facts at issue remain the same, as well as the claims involving similar issues of law. Defendant UTAustin would therefore not be prejudiced by having to develop new theories of defenses.

Further, Plaintiff asserted enough facts to support ADA Title II and Retaliation claims.

### III.    Adequately Pled ADA Title II Claim

Due to Plaintiff's prior counsel being disbarred, the Court graciously allowed Plaintiff time to seek new counsel and further amend her Complaint. The Court ruled all of Plaintiff's claims dismissed as being time barred with the exception of Plaintiff's ADA/Retaliation claims. Plaintiff sought new counsel and brought forth her allowed Third Amended Complaint limited to claims proceedings from the March 20, 2022 Court Order.

Plaintiff brings forth the same ADA claim that the Court allowed in the March 20, 2022 Court Order. A single stoke typo occurred in Plaintiff's operative Complaint. Taken into context it is clear that Plaintiff is continuing to bring forth

her Title II claim, not a new Title III claim. A type of "Title III" occurs in a single spot of Plaintiff's operative Complaint [Dkt. 48, p.2].

Plaintiff was not made aware of the typo until receiving Defendant's current Motion to Dismiss. Given the nature of the claims that were allowed under the Courts March 20, 2022 Order, Defendant's should have brought the inconsistency to Plaintiff's attention which would have allowed for Plaintiff to amend the typo. Alternatively, Defendants could have moved for a more definite statement.

"[A] party may move for a more definite statement of a pleading to which a responsive pleading is [*24]  allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Defendant's did not meet and confer with Plaintiff prior to the filing of the present motion. Had this occurred, Plaintiff's could have, and would have, corrected the error.

## IV.    Adequately Pled Retaliation Claim

Plaintiff's retaliation claims are adequately pled. Defendant UTAustin claims that Plaintiff's claims (1) are barred by sovereign immunity, that Plaintiff has (2) failed to allege any actual protected activity to support a retaliation claim, and more specifically that Plaintiff fails to describe any particular request for a specific accommodation within the actionable period, (3) failed to allege any materially adverse action, (4) that there was a causal connection, and (5) that the alleged

retaliator had knowledge of the protected activity. [Dkt. 51, p.8]. As outlined below, Plaintiff has adequately pled each of these elements.

### C. Claims not barred by sovereign immunity

To determine whether a Defendant can claim sovereign immunity, a court must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882, 163 L. Ed. 2d 650 (2006).

### D. Protected activity

Plaintiff has adequately alleged a protected activity to support her retaliation claim. A request for accommodation can be the basis for a retaliation claim. *See Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 149 (2d Cir. 2002) (citing *Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999). Plaintiff sufficiently alleges such requests for accommodation, namely the request to the Art History department to not have to complete her coursework in Italian, her request for advisory assistance on said thesis to Professor Papalexandrou, her request to Professor Clark for extended time for exams, recording lectures, flexibility in attendance and reduced stress environment for exams because of her disabilities, her request for similar

accommodations to Professor Davies because of her disabilites, and her request to Professor Smith for accommodations such as flexible attendance and flexible deadlines on assignments because of her disabilities. [Dkt. 48, p.23, 24, 11, 13]. Plaintiff further engaged in a protected activity when she took time off her studies to accommodate her disabilities. [Dkt. 48, p.5].

An injury occurs only once the "disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity. *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011). For a retaliation claim as the current one, this is only the case once the materially adverse action has taken place.

### E. Materially adverse action

Defendant claims that Plaintiff has failed to allege a materially adverse action. "The Fifth Circuit has not defined the term "adverse action" in the context of disability retaliation in a school setting." *Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.,* 428 F. Supp. 2d 640, 665 (S.D. Tex. 2006). In an employment situation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (internal citation and quotation omitted). In this case, Plaintiff has adequately pled actions which a reasonable student could have found materially adverse. Namely the denial of disability accommodations by Defendant and the poor treatment she received after

asking for recommendations. [Dkt. 48, pp.23, 24]. The same applies to Defendant UTAustin's actions prolonging the scheduling of the Colloquium and refusal to allow Plaintiff to sign up for classes in 2020. [Dkt. 48, p.14].  Another materially adverse action pled by Plaintiff is the refusal of Dr. Clarke to advise her on her thesis, requiring her to take another leave of absence. [Dkt. 48, p.12]. In connection with this is the claim that the department discriminated against Plaintiff by requiring her to take course work in Italian in April of 2018, as well as the History Department fighting Plaintiff on which courses she would be allowed to take generally to complete her thesis. [Dkt. 48, p.8]. Further, Dr. Papalexandrou's refusal of assistance in 2018 is listed by Plaintiff. [Dkt. 48, p.18]. Whether these actions were materially adverse to a reasonable student is a question to be decided by the jury at trial.

Plaintiff's allegations are not barred by the statute of limitations as discussed in Subsection D.

### F. Causal connection

Plaintiff sufficiently pleads a causal connection between protected activities and adverse actions. [*See generally* Dkt. 48, p.23, 24] "A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him." *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal citation and quotation omitted). Plaintiff therefore also lays out a connection between the request for accommodations and assistance and the poor

treatment she received, when she states that one directly followed the other. [Dkt. 24, p.23, 24].   Further, it is evident from Plaintiff's pleading that Dr. Clarke's continuing poor treatment of Plaintiff, resulting in delaying her thesis and graduation in 2020, is in connection to her disabilities and requests for accommodations, which he was not willing to grant before either, resulting in a causal chain of events. [Dkt. 48, pp.12, 23, 24]. The same argument applies to UTAustin's other adverse actions regarding Plaintiff, which all began in timely proximity to her time of absence due to her disabilities and continued to happen in a chain of events. [Dkt. 48, p.7].

### G. Knowledge

Plaintiff sufficiently pleads knowledge on part of Defendant when she states that she informed UTAustin and its employees of her requests for accommodations and assistance. [Dkt. 48, pp.4,12, 23, 24].

### V.   The Latest Pleading Does Adequately Plead a Claim under the ADA and/or Rehab Act

### H. Adequately Pled Claim of Discrimination

(1) **Plaintiff is a "qualified individual" under the ADA**

Plaintiff pled sufficient facts to establish that she is a "qualified individual" under the ADA. A "qualified individual" is one with a "physical or mental impairment that substantially limits one or more major life activities," having a record of such an impairment, or being regarded as having such an impairment. 42

U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

Plaintiff pleads in her complaint that she was diagnosed with, and has a record of, bipolar and extreme depressive episodes. [Dkt. 48, p.4]. Plaintiff further lays out that, to the present, this impairment requires her to take incompletes for classes in order to finish the limited amount of course work she is capable of completing. [Dkt. 48, p.6]. This is a major life activity because it completing the coursework consists of learning, reading, concentrating, and working, as outlined in 42 U.S.C. § 12102(2)(A). Further, Plaintiff pleads that she suffers from "(a) Thyroid nodule growth, triggering Hashimoto's; (b) chronic fatigue syndrome; (c) 6+ migraines per month; (d) Digestive sensitivity (IBS); (e) 40+ food/ingredient sensitivities; (f) Current infertility due to thyroid disease (may be long term); (g) Crippling anxiety, stress, and panic attacks; (h) Chronic pain and inflammation; (i) Disturbed sleep; and (j) Impaired cognition." [Dkt. 48, p.7]. All these are disabilities which affect limit

major life activities, namely the operation of major bodily functions in the sense of 42 U.S.C. § 12102(2)(B). For example, Hashimoto's affects functions of the immune system, while IBS affects the digestive and bowel functions. Her thyroid disease affects reproductive functions, as infertility is listed as a current impairment in the complaint. [Dkt. 48, p.7].

Plaintiff has additionally plead that she could exceed the requirements of the Art History program with reasonable accommodations, as evidenced by her prior academic career. [Dkt. 48, pp.3-4, 20].

Plaintiff suffers from these impairments to the present day, nothing in Plaintiff's complaint suggests that these disabilities were only present outside the relevant time period. Plaintiff pled sufficient facts to establish that she is a "qualified individual" under the ADA during the relevant time period.

(2) **Plaintiff was excluded from participation in, or denied the benefits of, services, programs, or activities for which UTAustin is responsible**

Plaintiff sufficiently pled that she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UTAustin is responsible.

Plaintiff was denied the benefits of the education services offered by Defendant UTAustin when she was denied assistance in various instances. Plaintiff pleads that in October 2018, Dr. Papalexandrou denied her assistance. [Dkt. 48, p.9].

In connection to this, Plaintiff states that she was discriminated against when she had to complete her thesis in Italian, and was required to complete Italian coursework. [Dkt. 48, p.8]. Plaintiff further pleads that Dr. Clarke refused to advise Plaintiff on her thesis in Spring 2020. [Dkt. 48, p.12].

Plaintiff was excluded from participation in UTAustin's education program in various instances. Plaintiff pleads that she was denied registration for classes in January 2020. [Dkt. 48, p.14]. This hindered her participation in education services offered by UTAustin, when she had to defer and was not able to start classes on time. [Dkt. 48, p.14]. Plaintiff was also denied participation when Dr. Clarke's refusal of assistance caused her having to defer classes. [Dkt. 48, p.12]. Plaintiff was further denied participation in education services when the History Department kept fighting Plaintiff on which courses she would be allowed to take generally to complete her thesis. [Dkt. 48, p.8]. Additionally, in her third amended complaint, Plaintiff restates claims that a Colloquium still has not been scheduled for Plaintiff. [Dkt. 48, pp.13, 14]. Whether or not she was by now allowed to hold the Colloquium is not of importance, as for a long time within the relevant time period, Plaintiff was denied participation in UTAustin's education program by not being allowed to hold her Colloquium. Plaintiff additionally pleads that she still being treated differently by Defendant UTAustin by not being included on the webpage, denying her participation of an activity for which UTAustin is responsible. [Dkt. 48, p.16].

15

Plaintiff further pleads various other times she was denied accommodations and assistance, denying her the benefits and participation in UTAustin's education program. To mention are the denial of Dr. Clark to advise her thesis and to grant her accommodations for her disabilities, the denial of Professor Davies to grant her accommodations for her disabilities, Professor Smith's denial to grant her accommodations for her disabilities, and Professor Frizzi's denial to grant her accommodations for her disabilities. [*See generally* Dkt. 48].

(3) **The exclusion was by reason of disability**

Plaintiff sufficiently pleads that she was discriminated because of her disability when she lays out that other students in the same situation as her but without a disability were not treated that same way. [Dkt. 48, p.9]. Plaintiff also points out that her denial of assistance by Professor Papalexandrou occurred in "the context" of this difference in treatment. [Dkt. 48, p.9]. Additionally, Plaintiff pleads that she "became a target" after her disabilities started to affect her schooling at UTAustin, further pointing out a connection between her disabilities and the various instances of exclusion, as she was not discriminated against before her disabilities became prevalent. [*See* Dkt. 48, p.7].

This discrimination was solely based on Plaintiff's disabilities, as no other factors differentiated her from other students in the program. [*See generally* Dkt. 48]. Therefore, this is an issue to be litigated at trial.

## I.   Adequately Pled Failure to Accommodate Claim

(4) **Plaintiff is a qualified individual**

As discussed above, Plaintiff is a qualified individual and pled so accordingly and adequately.

(5) **The disability and its consequential limitations were known by the covered entity**

The "plaintiff must show that the entity knew of the disability and its consequential limitations, . . . because the plaintiff requested an accommodation." *Cadena v. El Paso Cnty.,* 946 F.3d 717, 724 (5th Cir. 2020) (internal citation omitted). Plaintiff adequately pled that the disability and limitations were known by the "covered entity", Defendant UTAustin, once she registered for accommodations due to her disabilities. [Dkt. 48, p.4]. It was thereafter the responsibility of UTAustin to ensure its professors would grant Plaintiff the needed accommodations should she request so. Plaintiff adequately pleads that all named individuals were delegated with implementing the policies and customs of their employer UTAustin. [Dkt. 48, p.19].

(6) **The entity failed to make reasonable accommodations**

Plaintiff adequately pled that Defendant UTAustin has failed to make reasonable accommodations. "EEOC regulations promulgated to implement the ADA define 'reasonable accommodation' as '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held

or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.'" *E.E.O.C. v. Chevron* at 620–21 (citing 29 C.F.R. § 1630.2(*o*)(1)(ii)).

Plaintiff identifies various accommodations denied to her in her complaint. These accommodation requests include a request of advising assistance to Professor Papalexandrou. [Dkt. 48, p.9]. Further, they include a request of advising assistance to Dr. Clarke. [Dkt. 48, p.12]. Additionally, Plaintiff requested extended time for exams, presentations, and homework assignments, right to record lectures, flexible attendance, restroom breaks, and taking exams in a "reduced distraction environment." [Dkt. 48, p.10, 11, 12, 13].

All these accommodations would have been reasonable, as they would have enabled Plaintiff to perform the essential tasks of a student at UTAustin, such as submitting classwork. Additionally, Defendant does not explain, and has never explained, that these accommodations would alter requirements that are essential to the instruction being pursued, therefore further underlining their reasonableness. [*See* Dkt. 51, p.12]

### J.  Plaintiff's ADA Claims are Not Barred by Sovereign Immunity

To determine whether a Defendant can claim sovereign immunity, a court must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did

not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882, 163 L. Ed. 2d 650 (2006).

(7) **Plaintiff does not fail to state a claim under Title II of the ADA**

As demonstrated in Subsection B., Plaintiff has adequately pled a claim under Title II of the ADA.

(8) **Plaintiff alleges violations of her Fourteenth Amendment rights**

Plaintiff adequately pleads that her Fourteenth Amendment rights were violated by Defendant UTAustin. "[T]he constitutional right to equality in education . . . is vital to the future success of our society." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.,* 405 F.3d 954, 958 (11th Cir. 2005). In light of this, "the Equal Protection Clause" was designed to abolish "governmental barriers presenting unreasonable obstacles to advancement on the basis of individual merit" in the educational setting. *Plyler v. Doe*, 457 U.S. 202, 221–22, 102 S. Ct. 2382, 2396–97, 72 L. Ed. 2d 786 (1982). Therefore, "Title II seeks to enforce the Fourteenth Amendment's prohibition on irrational disability discrimination." *Tennessee v. Lane*, 541 U.S. 509, 510, 124 S. Ct. 1978, 1980, 158 L. Ed. 2d 820 (2004) (internal citation omitted).

In this case, Plaintiff pleads that her constitutional right to equality in education was violated through the actions of Defendant UTAustin. UTAustin has

presented Plaintiff with "unreasonable obstacles to advancement" on the basis of her individual abilities and disabilities. Plaintiff pleads so accordingly throughout her complaint and as outlined in Subsection B. [*See generally* Dkt. 48].

All these actions taken by Defendant UTAustin were irrational, as evidenced by the fact that to this day, Defendant has not been able to plead a sufficient reason for the various instances of discrimination incurred by Plaintiff.

(9) **There is congruence/proportionality to support an ADA claim**

Plaintiff adequately pleads that there is congruence and proportionality to support an ADA claim. More specifically, "there must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997). Defendant claims that its duty to accommodate Plaintiff under Title II is not congruent and proportional to its "wide latitude in providing academic service offerings to students." [Dkt. 51, p. 17]. But Title II "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided." *Tennessee v. Lane*, 541 U.S. 509, 511, 124 S. Ct. 1978, 1981, 158 L. Ed. 2d 820 (2004). In this case, none of Plaintiff's requested accommodations would disturb the ability of UTAustin to continue offering services to its other students. In fact, Plaintiff pleads only requested minimal assistance of individual professors. [*See generally* Dkt. 48]. Additionally, Plaintiff simply asks to not continuously be

20

discriminated against by UTAustin's departments, and therefore asks Defendant to stop a certain behavior, a task which should easily be fulfilled compared to requiring to take up a certain behavior. [*See generally* Dkt. 48]. Therefore, congruence and proportionality support Plaintiff's ADA claim as it is pled.

Further, the court in *Tennessee v. Lane* found "a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including . . . public education . . . ," therefore giving it the same standing as the cases main focus of access to courts, further suggesting that Title II was an appropriate response to this history of unequal treatment. *See* 541 U.S. 509, 525, 124 S. Ct. 1978, 1989, 158 L. Ed. 2d 820 (2004).

(10)    **Claims are Not Barred by Limitations**

Plaintiff's claims are not barred by limitations. Plaintiff alleges various instances of retaliation and discrimination which are not barred by a two-year statute of limitations. Plaintiff first claimed in her second amended complaint on July 12, 2020, that in Spring 2020, Dr. Clarke refused to advise her on her thesis, requiring her to take another leave of absence. [Dkt. 22, p.12]. Plaintiff also was denied registration for classes in January 2020, a claim she raised in her second amended complaint in July 2020. [Dkt. 22, p.14]. As Defendant admits, the denial of assistance by Dr. Papalexandrou in October 2018 is not barred as well. [Dkt. 51, p.18]. In connection with this is the claim that the department discriminated against

Plaintiff by requiring her to take course work in Italian in April of 2018, as well as the History Department fighting Plaintiff on which courses she would be allowed to take generally to complete her thesis. [Dkt. 48, p.8]. Additionally, in her third amended complaint, Plaintiff restates claims that a Colloquium still has not been scheduled for Plaintiff. [Dkt. 48, pp.13, 14]. It can not be alleged by Defendants that this claim accrued right after Plaintiff's first request in November 2018. The time that Plaintiff finally realized that she was being discriminated against, and whether this was outside the statute of limitations or not, is an issue to be litigated at trial. Naturally, Plaintiff only realized after a while that her Colloquium would not be scheduled within a timely manner. The same is the case for the claim that Plaintiff is still being treated differently by Defendant UTAustin by not being included on the webpage. [Dkt. 48, p.16].

Defendant has discriminated and retaliated against Plaintiff in various other ways. To mention are the denial of Dr. Clark to grant her accommodations for her disabilities, the denial of Professor Davies to grant her accommodations for her disabilities, Professor Smith's denial to grant her accommodations for her disabilities, and Professor Frizzi's denial to grant her accommodations for her disabilities. [*See generally* Dkt. 48]. Further, the financial department of UTAustin discriminated against Plaintiff when they wanted to make their own independent and

illegal evaluation into her disabilities as the start of the discriminatory attitude towards Plaintiff by Defendant. [Dkt. 48, p.5].

As far as this Court has allowed Plaintiff to amend these claims, the "continuing violation" theory applies. "Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. . . . The end goal of the continuing violation theory is to accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (internal citations and quotation marks omitted). "There are two types of cases in which the continuing violation theory can toll the statute of limitations: (1) where the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time barred; and (2) where an initial violation, outside the statute of limitations, is repeated later." *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1033 (W.D. Tex. 2013). In this current case, Plaintiff clearly shows a pattern of discrimination in her complaint, continuing from 2015 until present days. [*See generally* Dkt. 48] All acts are related and based on

UTAustin's Art History faculty's opinion of Plaintiff within the department. At least one of the violations repeated itself, with Dr. Clarke dismissing Plaintiff's request for accommodations in 2015 and again denying Plaintiff's requests in 2020. [Dkt. 48, pp.10, 12].  Additionally, the authority to which Defendants cite is not applicable in this case. In *McGregor*, the discrimination was concluded in the past, therefore denying the application of the theory. *McGregor v. Louisiana State Univ. Bd. of Sup'rs* , 3 F.3d 850, 867 (5th Cir. 1993). In the current case, the discrimination is still on-going, with acts of discrimination and retaliation within the statute of limitation's time period, as demonstrated above. Further, *Lyle*, concerns the dismissal of a student and further discrete acts. *Lyle v. Univ. of Tex. Health Sci. Ctr., San Antonio* 2010 WL 1171791, at *2 (W.D. Tex. Mar. 24, 2010). In this case, Plaintiff is not dismissed but claims an uninterrupted pattern of discrimination throughout her time at UTAustin.

Further, the "discovery theory" applies. "[T]he discovery rule contemplates discovery of the injury and does not suspend the running of the limitations period until the plaintiff discovers all the elements of a cause of action." *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1438 (N.D. Tex. 1997) (internal citation omitted). In this case, Plaintiff is injured in part by the delay in her studies through denied assistance, along with a worsening in academic standing and financial aid increasing every day. [Dkt. 48, pp.11, 14]. Plaintiff was not aware of

these injuries until much later than the denial of assistance and accommodations, and other discriminatory acts of the department. Plaintiff was scheduled to graduate in 2019, only when that was not possible, she realized the extent to which she would be delayed by the denials of accommodation. Plaintiff then alleged all these claims in her second amended complaint in January 2020.

(11)    **Plaintiff has Standing**

Defendant UTAustin claims that Plaintiff failed to establish standing. More specifically, Defendant seems to allege that Plaintiff merely alleges conjectural or hypothetical injury instead of a concrete one. A "concrete injury" is one where the plaintiff suffers "physical or monetary" at the hands of the defendant. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021). A conjectural or hypothetical injury is one where "the injury's existence depends on the decisions of third parties not before the court." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

Plaintiff alleges such damages in various places throughout her third amended complaint. First, Plaintiff claims damages in the form of "a mountain of financial aid . . . that will likely reach over $160,000.00," caused by Defendant's various denials and delays. [Dkt. 48, p.11] Further, Defendant's actions have caused Plaintiff's academic and professional standing to plummet, affecting future income perspectives. [Dkt. 48, pp.14, 15]. When Defendant claims that Plaintiff did not

fulfill all requirements to have her Colloquium scheduled in 2018, then this is an issue of fact to be decided at trial. [*See* Dkt. 51, p.19]. Plaintiff in her complaint pleads she has "followed the rules presented to her" for "every required step." [Dkt. 48, pp. 14].

Plaintiff further alleges physical and emotional harm suffered as the result of Defendant's actions. [Dkt. 48, p.16].

Further concrete injuries Plaintiff alleges are all stemming from Defendant's actions as well, such as "(a) increased food and medication costs due to sensitivities/allergies; (b) a limited availability of sensitivity friendly health products; (c) unpredictable digestive issues limit diet, food availability, and social/travel options; (d) exponentially increased stress and anxiety; (e) greater emotional and relationship strain; (f) increased medical treatment and therapy appointments; (g) increased medical costs; and (h) a loss of ability to enjoy the same life opportunities reasonably available to all others." [Dkt. 48, p. 17]. "Further, the harmful results being suffered by Plaintiff Amanda caused by the acts, omissions, and Denials committed by Defendant UTAustin as to Plaintiff Amanda include but are not being limited to: (a) an extreme and wrongful compromise of Amanda's current and future health; (b) a jeopardized educational investment of Amanda's time and money; (c) the deprivation of Amanda's chance to enjoy the same opportunities as others; (d) a radically increased financial burden; (e) an increased

frequency of doctor visits; (f) an increase frequency of specialists visits; (g) an increase of non-insurance covered medical treatments (chiropractor); (h) an increased food and natural supplement costs; (i) an increased cost for allergy friendly health products; (j) possible long term infertility; (k) medication changes with cost increases; (l) increased therapy and counselling sessions and costs; (m) limited personal and professional travel opportunities which are key for a career that performs abroad; (n) limited social opportunity; (o) chronic pain and fatigue; (p) chronic stress and anxiety; (q) limited general activity; (r) impaired cognition; (s) increased required amount of sleep; (t) no known course of treatment to cure autoimmune disease; and (u) an increased risk of developing additional autoimmune diseases." [Dkt. 48, pp.17, 18, 19].

Plaintiff therefore adequately pleads enough facts to establish an injury and therefore standing.


## CONCLUSION

**WHEREFORE** the Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.  Should this Court find Plaintiffs' complaint defective in any way, Plaintiff respectfully requests leave to amend.

Dated:  June 17, 2022                    Respectfully Submitted,

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 1:19-cv-01202-RP |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, | § | |
| | | |
| *Defendant*. | | |

---

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving all registered users in this case.

*/s/ Keith Altman*
Keith Altman, Esq.