IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMANDA VALENZUELA, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:19-CV-1202-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, | | |
| Defendant. | | |

**ORDER**

Before the Court is Defendant's The University of Texas at Austin's ("UT") Motion to Dismiss Plaintiff's Third Amended Complaint, (Dkt. 51), along with the parties' responsive briefing, (Dkts. 52, 53). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

**I. BACKGROUND**

Plaintiff Amanda Valenzuela ("Valenzuela") is a graduate student at UT working on a master's degree in Art History. (3d Am. Compl., Dkt. 48, at 4). Valenzuela initially filed this action on December 11, 2019, alleging UT has discriminated against her because of her disabilities. (Compl., Dkt 1, at 1). In response to a motion for a more definite statement, Valenzuela filed her first amended complaint on April 28, 2020, and included additional allegations. (1st. Am. Compl., Dkt. 12). Valenzuela filed her second amended complaint, (Dkt. 22), on July 13, 2020, again adding allegations.

The Court granted UT's Motion to Dismiss Valenzuela's second amended complaint, (Dkt. 17), on March 30, 2022. (Order, Dkt. 47). The Court found that the majority of Valenzuela's claims were time-barred by the statute of limitations. (*Id.* at 8). The Court also dismissed Valenzuela's § 1983 claims because Texas has not waived, nor Congress has abrogated, sovereign immunity for

1

§ 1983 suits. (*Id.* at 9–10). Finally, the Court found that Valenzuela had failed to show a *prima facie* case of discrimination under Title II of the American with Disabilities Act ("ADA") that could abrogate UT's sovereign immunity and dismissed all remaining ADA. (*Id.* 10–12). For the same reason, the Court also dismissed all causes of action under the Rehabilitation Act ("Rehab Act") pursuant to Federal Rule of Civil Procedure 12(b)(6).

In its order, the Court granted Valenzuela limited leave to amend her complaint. The Court denied leave to amend any time-barred claims and her § 1983 claims. (*Id.* at 13). However, the Court allowed Valenzuela to amend her non-time-barred ADA or Rehab Act claims. The Court noted that it had dismissed the remaining claims because Valenzuela did not properly allege she was a qualified individual under either law, but that it was not addressing any other deficiencies in her claims at that time. (*Id.*).

In her third amended complaint, Valenzuela describes several instances of discrimination by UT because of her disabilities. Her factual allegations are nearly identical to those in previous complaints. She alleges the following: Valenzuela enrolled in UT's Art History program in 2015 and registered for accommodations due to her disabilities. (3d Am. Compl., Dkt. 48, at 3–4). Valenzuela does not specify which disabilities she notified UT of, but she was diagnosed with bipolar disorder and extreme depressive episodes. (*Id.* at 4). Her condition was managed with medication, but she had to discontinue the medication because she had a severe allergic reaction to it. (*Id.*). In 2015, Valenzuela took a class with UT Professor Johnathan Clarke ("Clarke"), who, according to Valenzuela, denied her accommodations, which included extended time on exams and homework assignments, the ability to record lectures, flexible attendance, and reduced distraction exam environments. (*Id.* at 10). Valenzuela was not able to finish Clarke's course. (*Id.*).

As a result of her disabilities and poor health, Valenzuela took a medical leave of absence from her studies in late 2015, and upon returning to UT in August 2016, Valenzuela began having

issues qualifying for financial aid. (*Id.* at 5). At the time of her return from her absence, Valenzuela was also told she would only be permitted to enroll in "independent studies" classes with Clarke because of her need for accommodations. (*Id.* at 11). In February 2017, the UT Health Center recommended a medication regimen for Valenzuela that allegedly included "toxic levels of iodine." (*Id.* at 5–6).

Valenzuela struggled with working with managing frequent doctor appointments into the spring of 2017, at which time she was diagnosed with Hashimoto's Thyroiditis. (*Id.* at 6, 7). To manage her workload, Valenzuela took incompletes for classes in spring of 2017. (*Id.* at 6). Valenzuela also alleges that she struggled with accessing accommodations in her classes. During the fall of 2015, fall of 2016, and fall of 2017, she took seminars with UT professor Penelope Davies ("Davies"), who, according to Valenzuela, denied her accommodations. (*Id.* at 11–12). Valenzuela also alleges that, in the fall of 2015 and fall of 2016, she took classes with UT professor Cherise Smith ("Smith"), and that Smith did not Valenzuela her accommodations either. (*Id.* at 12–13).

In April 2018, UT's Art Department determined Valenzuela would be required to take coursework in Italian, a requirement that has been waived for students without disabilities. (*Id.* at 8–9). Valenzuela began taking Italian in spring of 2018 with UT professor Adria Frizzi ("Frizzi"). (*Id.* at 13). Valenzuela alleges that, although Frizzi "was better than the other professors" at granting Valenzuela her accommodations, Frizzi denied her some accommodations. (*Id.*). In October 2018, Valenzuela requested that UT professor Nassos Papalexandrou ("Papalexandrou") advise her studies, a request he rejected that same day stating that Valenzuela "rubbed him the wrong way." (*Id.* at 9). Valenzuela took this comment to mean he did not want to work with her because of her disabilities. (*Id.*).

In November 2018, Valenzuela needed to begin scheduling her Colloquium, a process required to present her thesis topic to the Art Department. (*Id.* at 13). Her Colloquium was

scheduled in the summer of 2020, after the filing of this action. (Mot. Diss., Dkt. 51, 19). In Spring 2020, Valenzuela had to take another leave of absence because Clarke declined to advise her thesis. (3d Am. Compl., Dkt. 48, at 12). In April 2020, Valenzuela requested to return to her coursework and was advised that her request to return would be reviewed. (*Id.* at 14). Finally, Valenzuela is not featured on UT's Art History website, as other graduate students are, which she attributes to UT's discrimination against her. (*Id.* at 16).

Valenzuela asserts that UT's alleged discrimination has harmed her in multiple ways. First, she states that as a result of the discrimination, she not only suffers from bipolar disorder and extreme depressive episodes, but also from "[c]rippling anxiety, stress, and panic attacks," "[c]hronic pain and inflammation" "[d]isturbed sleep," and "[i]mpaired cognition," among medical issues. (*Id.* at 7). She alleges her treatment has harmed her educational and professional standing, jeopardized her career, and endangered her investment. (*Id.* at 14–19). Overall, Valenzuela avers that her experience at UT has caused her a variety of physical and emotional harms and threatens to cause her others. (*Id.* at 17–21).

Based on the foregoing facts, Valenzuela seeks relief to address UT's (1) failure to Accommodate under Title II of the Americans with Disabilities Act (42 U.S.C. § 12101); (2) violations of § 504 of the Rehab Act, (29 U.S.C. § 701 et seq.); and (3) & (4) retaliation under the ADA and the Rehab Act. (Sec. Am. Compl., Dkt. 48, at 19–24). The other individuals named in her complaint (Clarke, Davies, Smith, Frizzi, and Papalexandrou) are not defendants.

UT makes several arguments in support of its motion to dismiss Valenzuela's third amended complaint, including that: (1) Valenzuela has made new claims that are outside of the limited grant of leave to amend granted by the court that Plaintiff fails to plausibly allege a retaliation claim; (2) she has failed to state a claim under Title II of the ADA and Section 504 of the Rehab Act; (3) UT is immune from suit under the Eleventh Amendment; that the Court has already dismissed some of

Valenzuela's claims and those claims remain barred by the statute of limitations; and (4) Valenzuela lacks standing. (*See generally* Mot. Diss., Dkt. 51).

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

In its order dismissing Valenzuela's Second Amended Complaint, (Dkt. 47), the Court identified and dismissed several claims as being barred by the statute of limitations. (*Id.* at 6–8; 13–14). Furthermore, the Court refused to grant leave to amend those claims. (*Id.* at 13). To the extent that Valenzuela reasserts those claims, they remain dismissed and barred by the statute of limitations.

With respect to the remaining the claims, the Court will first address UT's motion to strike Valenzuela's retaliation claims. (Mot. Diss., Dkt. 51, at 6). The rest of the Court's analysis will focus on the three alleged instances of discrimination and retaliation that are not barred by the statute of limitations: (1) Papalexandrou's refusal to advise Valenzuela on her thesis in 2018, (3rd Am. Compl., Dkt. 48, at 9), (2) Clarke's refusal to advise Valenzuela on her thesis in 2020, (*id.* at 12), and (3) Valenzuela's issues scheduling her Colloquium in November 2018, (*id.* at 14).

6

### A. Motion to Strike Retaliation Claims

UT argues that Valenzuela's retaliation claim[1] is not timely because she had not pled or been given leave to file these claims, and the Court only granted her leave to amend claims that had been asserted and were not time-barred. (Mot. Diss., Dkt. 51, at 6; Reply, Dkt. 53, at 2–3). Although it is true that the Court granted a limited leave to amend, Valenzuela had pled facts that support a retaliation claim under the ADA or the Rehab Act in her Second Amended Complaint. (*See* 2nd Am. Compl., Dkt. 47). Therefore, the retaliation claims fall well within the Court's leave to amend, and the Court will deny UT's motion to strike.

### B. Sovereign Immunity

Valenzuela has stated three alleged instances of discrimination that are not time barred: (1) Papalexandrou's refusal to advise Valenzuela on her thesis in 2018, (3d Am. Compl., Dkt. 48, at 9), (2) Clarke's refusal to advise Valenzuela on her thesis in 2020, (*id.* at 12), and (3) Valenzuela's issues scheduling her Colloquium in November 2018, (*id.* at 14). UT contends that Valenzuela's ADA claims based on these alleged actions are barred by sovereign immunity. (Mot. Diss., Dkt. 51, at 6–7, 8 n.5).

Sovereign immunity based on the Eleventh Amendment "is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Federal courts "may not entertain a private person's suit against a State," unless the State has waived its sovereign immunity or Congress has abrogated it by legislation. *Id.* at 253–54. Further, "sovereign immunity deprives the court of jurisdiction," so "claims barred by sovereign immunity can be dismissed" under Rule 12(b)(1). *City of Schertz v. United States Dep't of Agric. by & through Perdue*, No. 18-CV-1112-RP, 2019 WL 5579541, at *2 (W.D. Tex. Oct. 29, 2019) (citing *Warnock v. Pecos*

---

[1] UT also sought to strike Valenzuela's ADA "Title III" claim. (Mot. Diss., Dkt. 51, at 6). However, Valenzuela has clarified that her "Title III" claim was a typo, and she is only pleading ADA claims under Title II. (Resp., Dkt. 52, at 7–8).

*Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)). It is well-established that sovereign immunity applies not only to actions where a state itself is the named defendant, but also to actions against state agencies and state instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017).

In *United States v. Georgia*, the Supreme Court established a three-part test for determining whether Title II validly abrogates states' sovereign immunity. 546 U.S. 151 (2006). A court must determine, on a "claim-by-claim basis": (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Id.* at 159. The Fifth Circuit has held that in order to check for abrogation under the *Georgia* three-part test, courts must first determine whether a plaintiff has stated a valid claim under Title II. *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617–18 (5th Cir. 2020). In sum, if Valenzuela has failed to properly state a claim under the ADA, the Court must find that her Title II claims do not abrogate UT's sovereign immunity.

1. Title II Failure to Accommodate Claims

The Court's sovereign immunity analysis begins and ends with its finding that Valenzuela's ADA discrimination claim cannot abrogate sovereign immunity because Valenzuela has not stated a valid *prima facie* claim under Title II. To establish a prima facie case of discrimination under Title II of the ADA, Valenzuela must show: (1) she is a "qualified individual" under the ADA; (2) she was excluded from participation in, or denied the benefits of, services, programs, or activities for which UT is responsible; and (3) the exclusion was by reason of disability. *Id.* at 618. Valenzuela can also plead discrimination through failure to accommodate if she shows that: (1) she is a qualified

8

individual with a disability; (2) the disability and its consequential limitations were known by UT; and (3) UT failed to make reasonable accommodations. *See Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (explaining that the Fifth Circuit recognizes failure to accommodate claims under Title II of the ADA).

The Court holds that Valenzuela has not sufficiently pled that she was excluded by reason of her disability. Valenzuela pleads two Title II retaliation claims that are not time barred: (1) Papalexandrou's refusal to advise Valenzuela on her thesis in October 2018, (3d Am. Compl., Dkt. 48, at 9), and (2) Clarke's refusal to advise Valenzuela on her thesis in 2020, (*id.* at 12). Valenzuela states that Clarke "remains discriminating against [Valenzuela] through his position as the Graduate advisor for Defendant [UT]'s Art History Program," and that "Dr. Clarke refused to take [Valenzuela] on and advise as to [her] thesis." (*Id.* at 11, 12). Similarly, Valenzuela claims that Papalexandrou's comment that she "'rubbed him the wrong way' was actually a statement that [he] had no interest in having anything to do with a student with" her disabilities. (*Id.* at 9–10). These conclusory allegations cannot support a Title II discrimination claim.

Valenzuela's allegations cannot support a failure-to-discriminate theory either because she has not pled that UT failed to make reasonable accommodations regarding her advising. Valenzuela identifies her requests for advising assistance supervision as accommodations. (Resp., Dkt. 52, at 18). However, nothing in the complaint suggests that these requests were indeed accommodations, as opposed to run-of-the-mill efforts to fulfill program requirements. Therefore, Valenzuela has failed to meet the third element of a failure-to-accommodate theory.

The Court finds that Valenzuela has not sufficiently pled a *prima facie* claim under Title II of the ADA. Accordingly, the Court must find that her Title II discrimination claim does not abrogate UT's sovereign immunity and dismiss her claims.

2. Rehabilitation Act Claims

Finally, the Court addresses whether Valenzuela has sufficiently pled her claim for violations of § 504 of the Rehab Act. The first element of a *prima facie* case under § 504 of the Rehab Act is the same as under Title II of the ADA: Valenzuela must show that that she is a qualified individual with a disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020). Section 504 of the Rehab Act adopts the ADA's definition of individual with a disability. 29 U.S.C. §§ 705(9)(B), 20(B), 794(a). As the Court has already found Valenzuela failed to meet her pleading burden on this element of her ADA claim, it must also hold that she has failed to do so regarding her Rehab Act claim. Therefore, the Court finds that Valenzuela's causes of action under § 504 must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 3. Retaliation Claims

Finally, Valenzuela pleads two retaliation claims that are not time barred: (1) Papalexandrou's refusal to advise Valenzuela on her thesis in October 2018, (3rd Am. Compl., Dkt. 48, at 9), (2) Clarke's refusal to advise Valenzuela on her thesis in 2020, (*id.* at 12). To establish a *prima facie* claim of retaliation under either the ADA or the Rehab Act, Valenzuela must demonstrate that: (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the two. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted). Although a request for accommodation can be the basis for a retaliation claim, Valenzuela has not adequately pled a request for accommodation. See *Weixel*, 287 F.3d at 149 (citing Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999). As Valenzuela cannot meet one of the elements, the Court will dismiss her retaliation claims.

## C. Leave to Amend

In her response, Valenzuela asks the Court to grant her leave to amend any defective claims. Generally, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation and internal quotation marks omitted). But the court may deny leave to amend where there is "a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

In its order granting UT and Clarke's motion to dismiss Valenzuela's Second Amended Complaint, the Court took into consideration the fact that Valenzuela's previous counsel had tendered his license to practice law to the State of Texas for permanent revocation. (Ord., Dkt. 47 (citing Mot. Stay Case, Dkt. 31)). However, Valenzuela's current counsel had been her attorney of record for almost five months when her last complaint was dismissed. (Notice of Att'y App., Dkt. 44; Ord., Dkt. 47). After the last dismissal, Valenzuela received four weeks to amend her complaint a third time.

At this time, the Court finds that there is substantial reason to deny any further leave to amend because Valenzuela has repeatedly failed to cure deficiencies in her complaint. The Court will deny Valenzuela's request for leave to amend.

## VI. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss Valenzuela's Third Amended Complaint, (Dkt. 51), is **GRANTED**. All of Valenzuela's claims are **DISMISSED WITH PREJUDICE.**

**SIGNED** on March 28, 2023.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE